Hugo HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13-02-620-CR.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

April 6, 2006.

Rehearing Overruled April 6, 2006.

Arnoldo R. Pena, Brownsville, for appellant.

Hugo Hernandez, Bryan, pro se.

Armando R. Villalobos, Dist. Atty., Rene B. Gonzalez, Asst. Dist. Atty., Brownsville, for appellee.

Before Justices YAÑEZ, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice YAÑEZ.

On November 30, 2005, a panel of this Court issued an opinion in this case.[1] We *sua sponte* withdraw our November 30, 2005 opinion and substitute this opinion in its place.

On January 1, 2002, appellant, Hugo Hernandez, was indicted on six counts of burglary of a building.[2] After a jury trial, he was convicted on counts one, three, four, five, and six. Enhanced by two prior burglary convictions, the jury assessed his punishment at ten years' imprisonment for each conviction, to be served concurrently. The record contains the trial court's certification that this is not a plea-bargain case and the defendant has the right of appeal.[3]

In three issues, appellant contends (1) the trial court erred in denying his motion to suppress, (2) the evidence is legally and factually insufficient to support his convictions for burglary,[4] and (3) the trial court improperly allowed the State to reopen evidence during the punishment phase of trial. We affirm in part and reverse and remand in part.

## Factual Background

After burglaries of several small businesses in Cameron County in mid-to-late 2001, the Brownsville Police Department initiated an investigation. After investigation of several crime scenes, police suspected that the burglaries may have been committed by the same individual. During their investigation, police received a tip from a crime-stopper's hotline that appel-

1. *Hernandez v. State*, No. 13–02–620–CR, 2005 WL 3212372, 2005 Tex.App. LEXIS 9878 (Tex.App.-Corpus Christi Nov. 30, 2005).

2. *See* Tex. Pen.Code Ann. § 30.02(a)(1), (3) (Vernon 2003).

3. *See* Tex.R.App. P. 25.2(a)(2).

4. In appellant's second and third issues, he challenges the legal and factual sufficiency of the evidence. For simplicity, we have consolidated his second and third issues into one issue and address them in issue two.

lant may have been involved in the burglaries. On April 18, 2001, police arrested appellant for violation of "several traffic laws." During appellant's processing at the police department for the traffic violations, without reading appellant his rights, police informed him of the tip they had received, and asked appellant whether he would allow them to photograph him. After appellant allegedly agreed, police took several photographs of him, and released him shortly thereafter. After more burglaries occurred, police decided to visit appellant again on September 21, 2001, while he was at a friend's residence. During their visit, police approached appellant as he entered the front door of the residence and asked him whether he would allow them to take additional photographs of him. Appellant allegedly consented and police took several more photographs. After further investigation, police determined that appellant had committed the burglaries and arrested him shortly thereafter.

## Motion to Suppress

■ In appellant's first issue, he contends the trial court improperly denied his motion to suppress the photographs because they were obtained as a result of an illegal search and seizure in violation of the United States and Texas Constitutions.[5]

### *Standard of Review*

■ The appropriate standard for reviewing a trial court's ruling on a motion to suppress is a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts and reviewing de novo the trial court's application of the law.[6] The trial court is the sole trier of fact and judge of the weight and credibility of the evidence.[7] We must afford almost total deference to the trial court's determination of historical facts supported by the record and its rulings on application of law to fact questions, or "mixed" questions of law, when those fact findings involve an evaluation of the credibility and demeanor of witnesses.[8] When, as here, the trial court does not make explicit findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling so long as those findings are supported by the record.[9] If the decision is correct under any theory of law applicable to the case, the ruling will be sustained.[10]

### *Applicable Law*

■ The Fourth Amendment of the United States Constitution and Article I, section 9 of the Texas Constitution forbid unreasonable searches and seizures.[11] Article 38.23 of the Texas Code of Criminal Procedure prohibits the admission of evidence obtained in violation of state or federal laws or constitutions against an accused at the trial of any criminal case.[12]

5. *See* U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9.

6. *See Maxwell v. State,* 73 S.W.3d 278, 281 (Tex.Crim.App.2002).

7. *See State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999).

8. *See Maestas v. State,* 987 S.W.2d 59, 62–63 (Tex.Crim.App.1999).

9. *See State v. Ross,* 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000) (en banc).

10. *See Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App.1990).

11. *See* U.S. CONST. AMEND. IV; TEX. CONST. art. I, § 9.

12. *See* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

However, constitutional prohibitions against warrantless searches and seizures do not come into play when a person gives free and voluntary consent to a search.[13] Voluntary consent to a warrantless search violates neither the United States or Texas Constitutions, nor the laws of Texas.[14]

### Relevant Facts

Immediately prior to trial, appellant's trial counsel agreed that a previously-filed motion to suppress concerning the photographs would be carried through to trial. At trial, during direct examination of Officer Jesus Vallejo, who participated in the investigation of the burglaries, the State requested that the trial court admit into evidence the photographs of appellant taken on both occasions to support its theory that appellant had committed the burglaries.

The photographs show appellant in various poses. Some show appellant wearing a shirt, and others show appellant's arms, hands, and shirtless upper-body. The photos are substantially similar in that they show several abrasions, cuts, and scratches on appellant's limbs and upper-body. The State sought to show that appellant's upper body had numerous abrasions, cuts, and scratches, consistent with injuries a burglar would have sustained climbing over walls and crawling through broken windows and holes in walls.

When the State requested admission of the photographs, appellant's trial counsel moved to suppress them and objected to their admission. After a voir dire examination of Officer Vallejo, who admitted to participation in the photography sessions, trial counsel argued that the photographs should be suppressed because police knew appellant was the main suspect in the burglary investigation and chose to "violate his rights" by photographing him. The court, without stating its reasons, overruled trial counsel's suppression motion and objection, and admitted all the photographs into evidence.

### Analysis

Officer Vallejo's uncontroverted testimony was that on both occasions, police asked for appellant's consent to be photographed. He further testified that appellant voluntarily consented to the police requests on both occasions. After hearing Officer Vallejo's testimony, the trial court could have determined appellant voluntarily consented to the police requests and that his constitutional rights were not violated.[15] Based on Officer Vallejo's uncontroverted testimony [16] and in deference to the trial court's ruling, we conclude the trial court's admission of the photographs was proper.[17] Accordingly, appellant's first issue is overruled.

### Sufficiency of the Evidence

In his second issue, appellant challenges the legal and factual sufficiency of the elements of identity, entry, and intent, regarding his burglary convictions.[18] We address these challenges in turn.

13. *See Foster v. State,* 101 S.W.3d 490, 495 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

14. *See Spight v. State,* 76 S.W.3d 761, 768 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

15. *See Ross,* 32 S.W.3d at 855–56; *Maestas,* 987 S.W.2d at 62; *Spight,* 76 S.W.3d at 768; *Foster,* 101 S.W.3d at 495.

16. *See Ross,* 32 S.W.3d at 855–56; *Maestas,* 987 S.W.2d at 62; *Spight,* 76 S.W.3d at 768; *Foster,* 101 S.W.3d at 495.

17. *See* Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); *Ross,* 32 S.W.3d at 855–56; *Maestas,* 987 S.W.2d at 62; *Spight,* 76 S.W.3d at 768; *Foster,* 101 S.W.3d at 495.

18. *See* Tex. Pen.Code Ann. § 30.02(a)(1), (3) (Vernon 2003).

## Applicable Law

■ Section 30.02 of the Texas Penal Code lists three "distinct ways" a burglary may be committed.[19] If a defendant is charged with burglary under subsections (a)(1) or (a)(2), the State is required to prove the defendant's intent to commit a felony or theft at the time the defendant entered or remained concealed in a habitation or building.[20] However, when a defendant is charged under subsection (a)(3), the State is not required to prove that the defendant intended to commit the felony or theft at the time of entry.[21] Alternate pleading of the differing methods of committing one offense may be charged in one indictment.[22] The conviction will be upheld if the evidence is sufficient to support a finding of guilt under any one of the theories submitted.[23] Guilt of the offense of burglary can be established circumstantially by the combined and cumulative force of all the incriminating circumstances.[24]

## Hypothetically Correct Jury Charge

■ On appeal, we measure the legal and factual sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge.[25] Such a charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is being tried.[26]

In this case, appellant was charged with six counts of burglary. A hypothetically correct jury charge against which we measure the sufficiency of the evidence would ask the jury if (1) appellant, (2) on or about the day of each alleged offense, (2) intentionally or knowingly, (3) entered a building, (4) not then open to the public, (5) without the owner's effective consent, (7) and committed a felony or theft.[27]

## Standard of Review

In a legal sufficiency review, an appellate court must examine the evidence presented in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense present beyond a reasonable doubt.[28] In making this determination, a reviewing court considers all the evidence admitted that will sustain the conviction, including improperly admitted evidence.[29] As fact finder, the jury is the exclusive judge of the credibility of

19. See TEX. PEN.CODE ANN. § 30.02(a) (Vernon 2003); *Espinoza v. State*, 955 S.W.2d 108, 111 (Tex.App.-Waco 1997, pet. ref'd) (citing *DeVaughn v. State*, 749 S.W.2d 62, 64–65 (Tex. Crim.App.1988)).

20. See TEX. PEN.CODE ANN. § 30.02(a)(1), (2) (Vernon 2003); *Espinoza*, 955 S.W.2d at 111.

21. See TEX. PEN.CODE ANN. § 30.02(a)(3) (Vernon 2003); *Espinoza*, 955 S.W.2d at 111.

22. See *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991).

23. See *Kitchens*, 823 S.W.2d at 258.

24. See *Medrano v. State*, 658 S.W.2d 787, 790 (Tex.App.-Houston 1983, pet. ref'd) (citing

*Phipps v. State*, 630 S.W.2d 942, 945 (Tex. Crim.App.1982)).

25. See *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App.1997).

26. See id.

27. See TEX. PEN.CODE ANN. § 30.02(a)(1), (3) (Vernon 2003).

28. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Young v. State*, 14 S.W.3d 748, 753 (Tex.Crim.App. 2000).

29. See *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App.2001).

witnesses and the weight to be afforded to their testimony.[30] The jury is free to accept one version of the facts, reject another, or reject all or any of a witness's testimony.[31]

In a factual sufficiency review, the appellate court views all the evidence in a neutral light and determines whether evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could not have been met.[32] A clearly wrong and unjust verdict occurs where the jury's finding is "manifestly unjust," "shocks the conscience," or "clearly demonstrates bias." [33] In conducting a factual sufficiency review, we review all the evidence.[34] We approach a factual sufficiency review with appropriate deference to avoid substituting our judgment for that of the fact finder.[35] Every fact need not point directly and independently to the accused's guilt.[36] A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances.[37]

### Identity

Regarding identity, appellant argues that the State presented insufficient evidence to establish the identity element of each burglary.

Generally, fingerprint evidence alone will be sufficient to sustain a conviction if the evidence shows that the print was necessarily made at the time of the burglary.[38] Fingerprint evidence will be sufficient if the possibility that the defendant's fingerprints were left in a manner consistent with innocence is highly unlikely.[39]

Police recovered fingerprints at the crime scenes of two businesses, Elia's Café and Milan's Shop. Officer Vallejo testified that prints from Elia's Café were recovered from the inside and outside of a window and from fragments of an adjoining broken window. He further testified that at Milan's Shop, prints were recovered from the upper-frame of a broken window located above a door to the shop. A fingerprint expert testified that the prints lifted from both businesses positively matched appellant's fingerprints. Several footprints were also discovered at the crime scenes of three other businesses, Worth Finance, Mare's Jewelry Shop, and Yerberia Reynosa. Officer Vallejo testified that the footprints were discovered inside a broken safe at Worth Finance. He also stated that footprints were left in mud in an alleyway behind Mare's Jewelry Shop and Yerberia Reynosa. According to Officer Vallejo, the recovered footprints appeared to match the sole pattern of a pair of shoes owned by appellant. The

---

**30.** *See Chambers v. State,* 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

**31.** *See Penagraph v. State,* 623 S.W.2d 341, 343 (Tex.Crim.App.1981).

**32.** *See Threadgill v. State,* 146 S.W.3d 654, 664 (Tex.Crim.App.2004) (en banc).

**33.** *See Prible v. State,* 175 S.W.3d 724, 730–31 (Tex.Crim.App.2005).

**34.** *See Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997).

**35.** *See Johnson v. State,* 23 S.W.3d 1, 7 (Tex. Crim.App.2000) (en banc).

**36.** *See Vanderbilt v. State,* 629 S.W.2d 709, 716 (Tex.Crim.App.1981).

**37.** *See id.*

**38.** *See Villarreal v. State,* 79 S.W.3d 806, 811 (Tex.App.-Corpus Christi 2002, pet. ref'd) (citing *Bowen v. State,* 460 S.W.2d 421, 423 (Tex. Crim.App.1970)).

**39.** *See id.*

State, without any objection by appellant's trial counsel, introduced evidence of the fingerprints, photographs of the footprints, and photographs of appellant's shoe pattern at trial.

Viewed in the light most favorable to the verdict, because appellant's fingerprints were recovered from specific points of entry at two crime scenes, and because evidence shows that the sole of appellant's shoe positively matched footprints left at three additional crime scenes, we conclude the evidence is legally sufficient to prove beyond a reasonable doubt that the fingerprints and footprints were necessarily made by appellant at the time of the burglaries.[40] Viewing the evidence as a whole in a neutral light, we further conclude that the jury, as the sole judge of the witnesses' credibility and weight to be given to their testimony, could have resolved, from the circumstantial evidence presented, the issue of identity beyond a reasonable doubt.[41]

### Entry

Appellant contends the State presented insufficient evidence to establish the element of entry regarding each burglary.

Direct evidence of entry is not required.[42] Entry may be established by inference, just as inferences may, and often must be used to prove the elements of an offense.[43] The State may prove entry through circumstantial evidence.[44]

The point and method of entry at each business was substantially similar. Initial access to the businesses was gained through a weak point in the buildings, such as a window or weak wall, alarm systems were defeated, and telephone lines were cut. As previously mentioned, appellant's fingerprints were recovered from points of entry at two crime scenes and evidence was presented to show that appellant's footprints matched those left at three of the crime scenes.

Viewed in the light most favorable to the verdict, because the burglaries were committed in a substantially similar manner, appellant's fingerprints were found at two crime scenes, and because evidence was presented showing that appellant's footprints matched those left at three of the crime scenes, we conclude a rational trier of fact could have found beyond a reasonable doubt the essential element of entry.[45] Viewing the evidence as a whole in a neutral light, we further conclude that the circumstantial evidence of the entry is not so obviously weak as to undermine confidence in the jury's determination,[46] nor do we find that the proof is greatly outweighed by contrary proof.[47]

---

40. See *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Young*, 14 S.W.3d at 753; *Villarreal*, 79 S.W.3d at 811.

41. See *Johnson*, 23 S.W.3d at 7; *Cain*, 958 S.W.2d at 408; *Vanderbilt*, 629 S.W.2d at 716; *Villarreal*, 79 S.W.3d at 811.

42. See *Lopez v. State*, 884 S.W.2d 918, 921 (Tex.App.-Austin 1994, pet. ref'd).

43. See *id.*

44. See *Gilbertson v. State*, 563 S.W.2d 606, 608 (Tex.Crim.App. [Panel Op.] 1978); *Draper*

*v. State*, 681 S.W.2d 175, 177 (Tex.App.-Houston [14th Dist.] 1984, pet. ref'd).

45. See *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781; *Young*, 14 S.W.3d at 753; *Gilbertson*, 563 S.W.2d at 608; *Draper*, 681 S.W.2d at 177.

46. See *Zuliani v. State*, 97 S.W.3d 589, 593–95 (Tex.Crim.App.2003); *Gilbertson*, 563 S.W.2d at 608; *Draper*, 681 S.W.2d at 177.

47. See *Zuliani*, 97 S.W.3d at 593–95; *Gilbertson*, 563 S.W.2d at 608; *Draper*, 681 S.W.2d at 177.

## Intent

■ Appellant contends the evidence is insufficient to establish the intent element of each burglary.

■ Intent, as an essential element of the offense of burglary, must be proved by the State beyond a reasonable doubt, and cannot be left simply to speculation and surmise.[48] Because intent is a fact question for the jury, it may be inferred from the surrounding circumstances.[49]

Representatives from each business testified that during non-business hours and without consent, a person forcefully entered their businesses and committed a burglary. Testimony from the representatives showed that several items were taken from each store, including a pistol, jewelry, food, clothing, $10,000 in merchandise, and approximately $6,000. Amado Martinez, an acquaintance of appellant, testified that appellant sold several pieces of jewelry to him. He further testified that he turned the jewelry over to police, when they visited him subsequent to the burglaries. The owner of Mare's Jewelry Shop testified that the value of the jewelry stolen from her shop was about $10,000. Officer Vallejo testified that during his investigation of the burglaries, he observed several cuts and abrasions on appellant, consistent with injuries a burglar would have sustained while illegally entering a building. The State introduced photos of appellant's shoes, footprints recovered from the inside of the safe at Worth Finance, and footprints recovered from the alleyway behind Mare's Jewelry Shop and Yerberia Reynosa. Officer Vallejo testified that the sole of appellant's shoe appeared to match the footprints recovered from the crime scenes.

Viewed in the light most favorable to the verdict, based on the circumstantial evidence presented concerning the circumstances of each burglary, the jury could have rationally inferred beyond a reasonable doubt appellant's intent to commit each burglary.[50] Viewing the evidence in a neutral light, we conclude the jury could have resolved any conflicts in the evidence and that the evidence is not so obviously weak so as to undermine confidence in the jury's determination.[51]

After reviewing all of the evidence under the appropriate standards of review, we conclude that the evidence is legally and factually sufficient to support appellant's convictions for burglary of a building.[52] Accordingly, appellant's second issue is overruled.

## Motion to Reopen Evidence

In appellant's third issue, he contends that at the punishment phase of the proceeding, the State failed to comply with article 36.01 of the code of criminal procedure.[53] In support of his contention, appellant argues that at the beginning of the punishment hearing, (1) the State failed to read two enhancement counts to the jury,

**48.** See LaPoint v. State, 750 S.W.2d 180, 182 (Tex.Crim.App.1986); Coleman v. State, 832 S.W.2d 409, 413 (Tex.App.-Houston [1st Dist.] 1992, pet. ref'd).

**49.** LaPoint, 750 S.W.2d at 182.

**50.** See Jackson, 443 U.S. at 319, 99 S.Ct. 2781; Young, 14 S.W.3d at 753; LaPoint, 750 S.W.2d at 182; Coleman, 832 S.W.2d at 413.

**51.** See Zuliani, 97 S.W.3d at 593–95; LaPoint, 750 S.W.2d at 182.

**52.** See Tex. Pen.Code Ann. § 30.02(a)(1), (3) (Vernon 2003); Zuliani, 97 S.W.3d at 593–95; Jackson, 443 U.S. at 319, 99 S.Ct. 2781; Young, 14 S.W.3d at 753; Kitchens, 823 S.W.2d at 258.

**53.** See Tex.Code Crim. Proc. Ann. art. 36.01(a) (Vernon Supp.2004–05).

(2) appellant's plea to the enhancements was not taken, and (3) the State failed to reintroduce evidence in support of the enhancements.[54]

### Relevant Facts

At the punishment phase of trial, after all evidence had been presented and both sides had rested, the State requested that the court reopen the evidence "so that the defendant may be arraigned on the enhancement counts." Appellant's counsel objected and argued that "the Court should then instruct the jury not to consider the enhancement counts and go forward with what we have." Appellant's counsel argued that the State failed to arraign appellant on the enhancement counts at the beginning of the punishment phase and was therefore "stuck with it." The court overruled counsel's objection and granted the State's motion "for the sole purpose of the enhancement counts and the pleaing [sic] to the enhancement counts." Immediately thereafter, the enhancement counts were read, appellant entered his plea of "not true," and the State closed. Appellant's trial counsel then re-urged the court to "dismiss the enhancement counts because it was not done properly." The trial court denied counsel's request. The court's charge, which contained the enhancement allegations, was then read to the jury and both sides proceeded with closing arguments. The State did not reintroduce the evidence in support of the enhancement allegations or stipulate to it by agreement with appellant after the en-

hancement allegations were read and appellant entered his plea.

### Applicable Law

Under article 36.01 of the code of criminal procedure, the reading of the enhancement paragraphs at the penalty stage in a bifurcated trial and the entering of a plea thereto are mandatory.[55] The purpose of this rule is to inform the accused of the charges against him and to inform the jury of the precise terms of the particular charge against the accused.[56] Without reading the enhancement allegations and the defendant's plea to them, no issue is joined to enhance punishment, and neither the jury nor the defendant is informed of the precise terms of the charge.[57] After the enhancements and plea are read to the jury, the State is required to introduce evidence in support of the enhancements.[58]

In *Turner v. State*, the Texas Court of Criminal Appeals held that because of the double jeopardy implications of failure to comply with article 36.01, the potential for harm to a defendant's right to a fair punishment hearing, and the interest in preventing a waste of judicial resources in future cases, it was not unreasonable, nor inconsistent with the purposes of the code, to require the State to "strictly comply" with the applicable portion of article 36.01.[59] In reaching its holding, the court concluded that a "bright line rule" was appropriate because, *inter alia*, the State was solely responsible for the error.[60] The

---

54. *See id.*

55. *See id.*

56. *See id.; Turner v. State*, 897 S.W.2d 786, 788 (Tex.Crim.App.1995) (citing *Warren v. State*, 693 S.W.2d 414, 415 (Tex.Crim.App. 1985)).

57. *See Turner*, 897 S.W.2d at 788; *Ex parte Sewell*, 742 S.W.2d 393, 395 (Tex.Crim.App. 1987).

58. *See* TEX.CODE CRIM. PROC. ANN. art. 36.01(a)(1) (Vernon Supp.2004–05).

59. *See Turner*, 897 S.W.2d at 789.

60. *See id.*

court also confirmed the proper procedure the State should follow to cure error in such circumstances: "when an error like the one here is discovered[,] the State can cure it by reading the enhancement paragraph, having the defendant plead to it, and reintroducing the evidence."[61] Accordingly, the court determined that a harm analysis was inapplicable to a violation of article 36.01.[62]

■ Since *Turner*, however, the court of criminal appeals has held that all errors, with the exception of certain federal constitutional errors labeled as "structural," are subject to a harm analysis.[63] Article 36.01 violations are not among the structural errors contemplated by the United States Supreme Court.[64] Although the court of criminal appeals has not expressly overruled *Turner*, we conclude its decisions since *Turner* suggest that article 36.01 violations are subject to a harm analysis.[65] Accordingly, we conclude that the error in the present case is subject to a harm analysis.

■ Because the error is statutory, we apply the harm analysis for non-constitutional error.[66] When reviewing error under rule 44.2(b), we only determine whether the error affected the defendant's substantial rights.[67] "To determine whether an error 'affected substantial rights,' we consider whether a party had a right to that which the error denied."[68] In other words, after examining the record as a whole, the appellate court must disregard the error if it has fair assurance that the error did not influence the jury or had but a slight effect.[69]

We note that several appellate courts have addressed whether a harm analysis is applicable to an article 36.01 violation.

61. *See id.* n. 5.

62. *See id.* at 789.

63. *See High v. State*, 964 S.W.2d 637, 638 (Tex.Crim.App.1998); *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

64. *See Linton v. State*, 15 S.W.3d 615, 620 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (citing *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)) ("Structural errors" include the total deprivation of the right to counsel at trial, a judge who was not impartial, unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, and the right to public trial).

65. *See* Tex.R.App. P. 44.2; *High*, 964 S.W.2d at 638; *Cain*, 947 S.W.2d at 264. The court of criminal appeals recently declined to directly address whether *Turner* is "still good law." *See Marshall v. State*, 185 S.W.3d 899 (Tex. Crim.App.2006). In *Marshall*, the State argued that its error in failing to read the enhancement allegations and take appellant's plea at the beginning of the punishment phase was not preserved for appellate review because the appellant had not objected. *Mar-*

*shall*, 185 S.W.3d at 902, n. 3. The court of criminal appeals held that the appellant was required to object "when the jury charge was read and it became abundantly clear that the state was asking for enhancement far beyond that specified in its notice to appellant." *Id.* at 903. The court further held that because appellant failed to object to the alleged error in the jury charge, he must show egregious harm before relief may be granted. *Id.* at 903 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984)). The court therefore remanded the case to the court of appeals to perform a harm analysis pursuant to *Almanza*. *See id.*

66. *See* Tex.R.App. P. 44.2(b); *Aguirre–Mata v. State*, 992 S.W.2d 495, 499 (Tex.Crim.App. 1999).

67. *See* Tex.R.App. P. 44.2(b); *Llamas v. State*, 12 S.W.3d 469, 471 (Tex.Crim.App.2000); *Aguirre–Mata*, 992 S.W.2d at 498.

68. *See Johnson v. State*, 72 S.W.3d 346, 348 (Tex.Crim.App.2002).

69. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

In *Linton*, the Fourteenth Court of Appeals recognized that article 36.01 requires that enhancements and a defendant's plea be read in the jury's presence at the beginning of the punishment hearing.[70] The court also noted that although the court of criminal appeals has not overturned *Turner*, its post-*Turner* decisions suggest that an article 36.01 violation is subject to a harm analysis.[71] The court further concluded that because the failure to read the enhancements and a defendant's plea to the jury is statutory error, the proper harm analysis is that for reviewing non-constitutional error.[72] The *Linton* court determined that the court of criminal appeals's "key concern" in *Turner* was that a failure to read the enhancements and have a defendant plead to them could mislead the defendant into believing the State had abandoned the enhancements, which could potentially cause a defendant to take the stand and incriminate himself.[73] However, the *Linton* court determined that no self-incrimination occurred in that case because the defendant did not take the stand, and evidence, such as penitentiary packets supporting the defendant's prior convictions, was admitted at the beginning of the punishment hearing.[74] In *Linton*, at the beginning of trial, the defendant had pled "not guilty" to the primary offense and "not true" to the enhancement allegations.[75] The record was silent, however, as to whether the trial court read the enhancement paragraphs and the defendant's plea of "not true" to the jury before the punishment hearing.[76] The *Linton* court concluded that the defendant was not misled into believing that the State had abandoned the enhancement allegations and held that the "apparent failure" to read the enhancement allegations and the defendant's plea at the beginning of the punishment hearing was harmless error.[77]

Similarly, in *Stegall*, the Dallas Court of Appeals concluded that the failure to read enhancement paragraphs and a defendant's plea at the beginning of a punishment hearing, as required by article 36.01, is statutory error subject to the harm analysis for non-constitutional error.[78] As in *Linton*, the *Stegall* court concluded that the "key concern" in *Turner* was that the defendant could be misled into believing the State has abandoned the enhancement paragraphs and take the stand and incriminate himself.[79] The *Stegall* court concluded that because the defendant did not take the stand at the punishment hearing, and because evidence, such as penitentiary packets, fingerprints, and photographs evidencing his prior convictions was admitted at the beginning of the punishment hearing, he was not misled into believing that the State had abandoned the enhancements and the "apparent failure" to read the enhancement allegations and the defendant's plea at the beginning of the punishment hearing was harmless error.[80]

In *Marshall v. State*, the Texarkana Court of Appeals held that because the

---

70. *See Linton*, 15 S.W.3d at 620.

71. *See id.*

72. *See id.*

73. *See id.*

74. *See id.* at 621.

75. *See id.* at 620.

76. *See id.*

77. *See id.* at 621.

78. *Stegall v. State*, No. 05–04–01283–CR, 2005 WL 1283541, *3, 2005 Tex.App. LEXIS 4206, *9 (Tex.App.-Dallas 2005, no pet. h.).

79. *Id.* at *3.

80. *See id.* at **3–4.

trial court failed to read the enhancement paragraphs and take the defendant's plea at the beginning of the punishment phase and the State failed to re-introduce evidence supporting the enhancement allegations following the defendant's plea of "not true," there was "procedurally" "no evidence" to support the enhancement of the defendant's sentence.[81] The Texarkana Court therefore reversed the defendant's sentence and remanded the case for a new punishment trial.[82] The Texarkana Court also found that (1) the jury charge regarding punishment enhancement was defective, (2) the failure to read the enhancement paragraph or take the defendant's plea at the beginning of the punishment phase of trial was error, and (3) the defendant's trial counsel made errors during the punishment phase of trial.[83] However, the Texarkana Court did not assess harm on any of these errors.[84] The Texarkana Court recognized that article 36.01 violations are subject to a harm analysis, but concluded that it was unnecessary to determine whether the article 36.01 violation was harmful because it had already determined that the defendant's sentence must be reversed and the case remanded for a new punishment hearing.[85]

The court of criminal appeals recently reversed the Texarkana Court's decision on grounds that it erred in failing to conduct a harm analysis on the alleged jury charge error.[86] The court of criminal appeals held that when the jury charge was read, the appellant was required to object, because at that point, it was clear that the State was seeking enhancement allegations that had not been included in the indictment or read to the jury.[87] The court of criminal appeals held that because the defendant failed to object, he must show egregious harm before relief may be granted.[88] The court therefore remanded the case to the Texarkana Court to perform a harm analysis on the alleged jury charge error pursuant to *Almanza*.[89]

In discussing the State's second ground for review,[90] the court of criminal appeals noted that the Texarkana Court "very specifically based its ruling on what it termed *'procedural* sufficiency,' finding that, because the supporting evidence was introduced before the reading of the prior conviction allegations and the taking of appellants's plea, 'no issue was joined.' " [91] The court of criminal appeals noted, however, that "this defect arose from a trial error, rather than a true lack

---

**81.** *Marshall v. State*, 2004 WL 2715398, *5, 2004 Tex.App. LEXIS 10718, *13–*14 (Tex. App.-Texarkana Dec. 1, 2004), *rev'd*, 185 S.W.3d 899 (Tex.Crim.App.2006) (designated for publication).

**82.** *See id.* at *5.

**83.** *Id.* at *3.

**84.** *Id.*

**85.** *Id.* at *6.

**86.** *Marshall*, 185 S.W.3d at 903. The court of criminal appeals sustained the State's third ground for review, in which the State argued that "the Court of Appeals erred in failing to address the issue of whether any error was harmless." *Id.* at 902, n. 1.

**87.** *Id.* at 903.

**88.** *Id.* at 903.

**89.** *See Almanza*, 686 S.W.2d at 171.

**90.** In its second ground for review, the State asserted that the Texarkana Court "erred in failing to consider all the evidence actually admitted at trial in its review of the sufficiency of the evidence supporting the enhancement of the defendant's sentence." The court of criminal appeals overruled the State's second ground.

**91.** *Marshall*, 185 S.W.3d at 902 (emphasis in original).

of evidence." [92] The court of criminal appeals noted that in reaching its decision, the Texarkana Court relied on *Welch v. State*, 645 S.W.2d 284, 285 (Tex.Crim.App. 1983).[93] The court of criminal appeals pointed out, however, that in *Welch*, the court "found trial error, not insufficient evidence." [94]

### Analysis

 Here, after all evidence had been presented and both sides had rested, the State requested that the court reopen the evidence "so that the defendant may be arraigned on the enhancement counts." Appellant's counsel objected, arguing that "the Court should then instruct the jury not to consider the enhancement counts and go forward with what we have." We conclude that this objection was sufficient to point out to the trial court the proper method to reintroduce the evidence to support the enhancement allegations.[95] We hold that the trial court did not err in granting the State's request to re-open the evidence for the purposes of reading the enhancement allegations paragraphs and entering appellant's plea to the allegations.[96] However, after the enhancement allegations were read and appellant pled "not true," the State again closed without either reintroducing the evidence in support of the allegations or stipulating to it pursuant to an agreement with appellant.

Thereafter, appellant's counsel re-urged the court to "dismiss the enhancement counts because it was not done properly." We hold that counsel's re-urging of his request to dismiss the enhancement counts or instruct the jury not to consider the enhancement allegations was also sufficient to point out the proper method to reintroduce the testimony.[97] Because the State failed to either reintroduce the evidence supporting the enhancement allegations or stipulate to the evidence pursuant to an agreement with appellant, the trial court erred when it denied appellant's request.[98] The only testimony regarding the

---

92. *Id.* at 902.

93. *Id.*

94. *Id.* at 902, n. 2.

95. *See Limon v. State*, 838 S.W.2d 767, 769 (Tex.App.-Corpus Christi 1992, pet. ref'd) (noting that an objection that the evidence heard before the plea be removed from the jury's consideration was sufficient to point out to the trial court the proper method to reintroduce testimony); *see also Dill v. State*, 697 S.W.2d 702, 709 (Tex.App.-Corpus Christi 1985, pet. ref'd) (holding that a request to instruct the jury to disregard testimony introduced before the enhancement allegations were read was sufficient to point out to the trial court the proper method to reintroduce the testimony).

96. *See Turner*, 897 S.W.2d at 789 n. 5; *Welch*, 645 S.W.2d at 285 (quoting *Castillo v. State*, 530 S.W.2d 952 (Tex.Crim.App.1976)); *Dill*, 697 S.W.2d at 709 (noting trial court did not err in permitting the State's tardy reading of the indictment).

97. *See Limon*, 838 S.W.2d at 769; *Dill*, 697 S.W.2d at 709.

98. We note that immediately prior to the State closing at the punishment phase (prior to the State's motion to re-open), the State requested that "all the evidence in the guilt or innocence phase be admitted during the sentencing phase." The trial court granted the request. We conclude, however, that the State's request did not constitute a stipulation. *See Dill*, 697 S.W.2d at 709. In *Dill*, after the trial court allowed the State to read the enhancement allegations (*after* the State had presented all its evidence in support of the allegations), the assistant district attorney stated that "the State has presented its evidence, and I would just like to inform the Court and the jury that the information that has been presented in the proceedings and testimony from Mr. Fernandez be applied to this charge that has just been read to the jury." The court held that this statement was neither a reintroduction of the evidence nor a stipulation. *See id.* Moreover, in the present case, the trial court granted the

enhancement allegations was presented before appellant's plea; the testimony was not stipulated to or reintroduced after appellant's plea, and was therefore not properly before the jury.[99]

 We also hold that the trial court's error in denying appellant's request was harmful.[100] The jury charge instructed the jurors that with respect to each of the counts alleged in Counts I, III, IV, V, and VI of the indictment, if the jurors found both enhancement allegations "true," the range of punishment for each count was not less than two years or more than ten years, plus if the jurors chose to assess a fine, it was not to exceed $10,000. They were further instructed that with respect to Counts I, III, IV, V, and VI of the indictment, if they did not find both enhancement allegations "true," the range of punishment for each count was a state jail felony for a period of not less than 180 days or more than two years, plus if the jurors chose to assess a fine, it was not to exceed $10,000. The jury found both enhancement allegations "true" and assessed punishment at ten years' imprisonment on each count. Accordingly, as in *Welch* and *Dill*, we hold appellant was clearly harmed by the jury's consideration of evidence presented before the enhancement allegations were read and appellant's plea was taken.[101] We further hold that as in *Welch*, because we have found trial error, the

State is not prohibited from pursuing enhanced punishment again at a new punishment trial.[102]

We sustain appellant's third issue, and reverse and remand this case to the trial court for a new punishment trial.

## Response to Dissent

The dissent agrees that the State erred by failing to either reintroduce the evidence supporting the enhancement allegations or stipulate to it after the allegations were read and appellant entered his plea. The dissent contends, however, that appellant's objection was insufficient to direct the trial court to the correct procedure to be followed: that the evidence introduced before the plea must be reintroduced or stipulated to by appellant. Accordingly, the dissent concludes that appellant did not preserve error.

In support of its argument, the dissent cites *Dill* and notes that unlike the defendant in *Dill*, appellant did not ask the court to instruct the jury to disregard evidence introduced before the reading of the enhancement allegations and the taking of appellant's plea.[103] The dissent also cites *Limon* in support of its argument that appellant's objection was insufficient to preserve error. In *Limon*, this Court stated that a request that the evidence heard before the plea be removed from the jury's consideration would have been suffi-

---

State's request to admit the evidence during the sentencing phase *before* the enhancement allegations were read and appellant's plea was taken. Accordingly, we conclude that the granting of the State's motion was neither a stipulation nor a reintroduction of the evidence.

**99.** *See Welch,* 645 S.W.2d at 285.

**100.** *See id.* (holding jury's consideration of evidence presented before the appellant's plea, and not having been stipulated or reintroduced, was clearly harmful to appellant);

*Dill,* 697 S.W.2d at 709 (noting court's error in not instructing the jury to disregard testimony presented before enhancement allegations were read was "obviously harmful to appellant as this included all the testimony before the jury at the punishment stage.")

**101.** *See Welch,* 645 S.W.2d at 285; *Dill,* 697 S.W.2d at 709.

**102.** *See Welch,* 645 S.W.2d at 286.

**103.** *See Dill,* 697 S.W.2d at 709.

cient to point out to the trial court the proper method to reintroduce the testimony.[104]

We find *Limon* both factually distinguishable and consistent with our holding in the present case. In *Limon,* the trial court allowed the State to re-open its case-in-chief so that the indictment could be read before the jury.[105] The defense counsel objected to the reading of the indictment; the trial court denied the objection and asked defense counsel if the State could re-offer the evidence it had already presented.[106] Defense counsel stated he had "no objection" to the State re-offering evidence.[107] The trial court then asked the State if it was going to re-offer all its prior evidence; the State responded affirmatively and the trial court granted the State's request.[108] On these facts, this Court noted that on similar facts in *Castillo v. State,* 530 S.W.2d 952 (Tex.Crim.App.1976), the court of criminal appeals had found (1) no re-introduction of evidence or stipulation had occurred and (2) the defendant failed to preserve error by not directing the trial court to the proper procedure.[109] Relying on *Castillo,* this Court in *Limon* held that the defendant's objection was insufficient to preserve error.[110] We noted in *Limon,* however, that a request by defense counsel that the jury not consider evidence heard before the plea would have been sufficient to point out to the trial court the proper method to reintroduce the testimony.[111]

We fail to see how appellant's request in the present case (that the trial court in-struct the jury not to consider the enhancement allegations) differs significantly from the defendant's request in *Dill* (and endorsed as sufficient in *Limon)* to instruct the jury not to consider evidence heard before the defendant's plea. We read the holdings in *Dill* and *Limon* as suggesting that appellant's request that the jury not consider the enhancement allegations was sufficient to apprise the trial court of the proper method to reintroduce evidence.[112]

We read *Limon* and *Dill* as requiring only that a defendant must "direct" the trial court to the proper procedure for reintroducing evidence. Asking the trial court to disregard evidence heard before a defendant's plea is sufficient.[113] Neither case suggests that a defendant must expressly lead the trial court, step by step, through the proper procedure. We conclude that finding such a requirement impermissibly shifts the State's burden to introduce evidence supporting the enhancement allegations to the defense. We do not endorse such a result and do not read the authority cited by the dissent as requiring it.

### Conclusion

We overrule appellant's first and second issues and affirm his burglary convictions. We sustain appellant's third issue, reverse his sentence, and remand this case to the trial court for a new punishment trial.

Dissenting opinion by Justice NELDA RODRIGUEZ.

104. *See Limon,* 838 S.W.2d at 769.

105. *Id.* at 768.

106. *Id.*

107. *Id.*

108. *Id.*

109. *Id.*

110. *Id.* at 769.

111. *Id.*

112. *See Dill,* 697 S.W.2d at 709; *Limon,* 838 S.W.2d at 769.

113. *See Dill,* 697 S.W.2d at 709; *Limon,* 838 S.W.2d at 769.

Dissenting Opinion by Justice
RODRIGUEZ.

## DISSENTING OPINION

I respectfully dissent from the majority's disposition of the third issue. In that issue, appellant contends the trial court committed reversible error by allowing the State to reopen testimony during the punishment phase of the trial after the State and appellant had closed. The majority concludes that "[b]ecause the State failed to either reintroduce the evidence supporting the enhancement allegations or stipulate to the evidence pursuant to an agreement with appellant, the trial court erred when it denied appellant's request" to "dismiss the enhancement counts because it was not done properly." It further concludes that appellant was harmed because "[t]he jury found both enhancement allegations 'true' and assessed punishment at ten years' imprisonment on each count," a range of punishment greater than would have been assessed if the enhancement allegations had not been considered. I agree there was a deviation that the State did not cure. However, I would conclude that, under the circumstances of this case and the precedent of this Court, appellant failed to preserve the State's error. Accordingly, I dissent and would affirm the judgment of the trial court.

## I. Background

At the beginning of the punishment phase, without first arraigning appellant on the enhancement counts and without appellant entering a plea to the enhancements, the State introduced testimony from four witnesses. After the presentation of the witnesses and after both sides closed and rested, the State informed the court that it forgot to request that the Court arraign appellant on the enhancement counts. The State asked leave of court to reopen the evidence in the punishment phase so that appellant could be arraigned on the enhancement counts. Appellant objected as follows:

> Both sides rested. Both sides closed. And to put the cart before the horse or the horse before the cart is their error.... At this time we stand forward to go on the punishment, and the [c]ourt should then instruct the jury not to consider the enhancement counts and go forward with what we have.

> The defense strenuously objects to the ... [S]tate's request ... to reopen for purposes of arraigning the defendant. That should have been done first. They failed to do so. Now they're stuck with it.

The trial court overruled the objection and granted the State's request to reopen "for the sole purpose of enhancement counts and the plea[d]ing to the enhancement counts." After the State read the indictment and appellant entered his plea of not true, appellant moved to dismiss the enhancement counts because "it was not done properly." The trial court denied appellant's motion, and the charge was read to the jury.

## II. Analysis

The correct procedure to be followed after a tardy reading of the indictment and the entering of a plea has been long established: upon learning of the error, the indictment is read to the jury, the accused enters a plea, and the State reintroduces the evidence; or the parties may stipulate to the evidence. When this is done, the issue is joined and a trial on the issue may be held. *Limon v. State,* 838 S.W.2d 767, 768–69 (Tex.App.-Corpus Christi 1992, pet. ref'd) (citing *Warren v. State,* 693 S.W.2d 414, 416 (Tex.Crim.App.1985) (en banc); *Welch v. State,* 645 S.W.2d 284, 285 (Tex.Crim.

App.1983); *Trammell v. State*, 445 S.W.2d 190, 193–94 (Tex.Crim.App.1969)); *see* Tex. Code Crim. Proc. Ann. art. 36.01(a) (Vernon Supp.2004–05); *Castillo v. State*, 530 S.W.2d 952, 954 (Tex.Crim.App.1976). "However, in the absence of an objection directing the court to the correct procedure, [appellate courts have held] that the error was not preserved, under the circumstances ... presented." *Limon*, 838 S.W.2d at 769 (quoting *Castillo*, 530 S.W.2d at 954).

In this case, when the State was allowed to reopen, it cured only part of its error. The State read the enhancement paragraphs of the indictment into the record, and appellant entered his plea of not true. The State did not reintroduce the evidence from the punishment phase that was admitted prior to the reading of the indictment and entry of the plea and prior to the State and appellant closing, and no stipulation was entered that the testimony would be the same and could be considered by the jury. *See Welch*, 645 S.W.2d at 285–86 (citing *Trammell*, 445 S.W.2d at 193–94); *see also Limon*, 838 S.W.2d at 768–69. However, appellant objected only that the process had not been done properly and asked the court to instruct the jury not to consider the enhancement counts. Appellant did not direct the trial court to the correct procedure to be followed regarding the evidence; that the evidence introduced before the plea be reintroduced or stipulated to by appellant. *See Limon*, 838 S.W.2d at 769; *cf. Castillo*, 530 S.W.2d at 954. Appellant did not ask the court to instruct the jury to disregard that evidence. *See Dill v. State*, 697 S.W.2d 702, 709 (Tex.App.-Corpus Christi 1985, pet. ref'd) (holding error preserved when defendant asked that evidence heard before the plea be removed from the jury's consideration). Unlike the majority, I would conclude that appellant's request differed significantly from *Dill* and *Limon* and that

it was not sufficient to apprise the trial court of the proper method to reintroduce evidence. Therefore, although the State failed to cure its error in its entirety, and I certainly do not condone such, under the circumstances of this case and following the precedent of the court of criminal appeals and of this Court, I would conclude that appellant did not preserve error. Accordingly, I would overrule this issue.

### III. Conclusion

Agreeing with the disposition of all other issues, I would affirm the judgment of the trial court.