

## NUMBER 13-08-00534-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

**MICHAEL LEE ZBRANEK,**                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                          **Appellee.**

---

**On appeal from the 156th District Court
Live Oak County, Texas.**

---

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Chief Justice Valdez**

Appellant, Michael Lee Zbranek, appeals his jury conviction for the offense of burglary of a building, a state jail felony. *See* TEX. PENAL CODE ANN. § 30.02(a), (c)(1) (Vernon 2003). After finding two enhancement allegations "true," the trial court sentenced Zbranek to ten years' imprisonment, and ordered him to pay restitution in the amount of $3,800 and court costs. In a single issue, Zbranek challenges the factual sufficiency of the evidence supporting his conviction. We modify the judgment, and as modified, affirm.

# I. BACKGROUND

Shortly after 7:00 a.m. on January 22, 2008, Jimmy Basset, Live Oak County Commissioner for Precinct 3, and his employee, Manuel Lozano, called police after finding that two Precinct 3 buildings had been broken into. Upon responding to the call, Deputy Joey Rodriguez and Investigator Charlie Stroleny found that two metal storage buildings had been broken into, and various equipment and power tools belonging to Precinct 3 were missing.

## A.    Precinct 3 Buildings

Commissioner Basset testified that six to eight weeks before the January 22 incident, someone had broke into the Precinct 3 buildings and stole equipment valued at approximately $3,800. Extra security measures, such as reinforced locks, were installed on the buildings, and Commissioner Basset "made it a practice" of driving by the buildings, often at night, to ensure that they were secure. Around 4:00 p.m. on Sunday, January 20, 2008, Commissioner Basset checked the doors and locks of the buildings, and found them secure. Because Monday, January 21, was a county holiday, county employees did not report to work. Upon arriving at the buildings shortly before 7:00 a.m. on Tuesday, January 22, Commissioner Basset and Lozano discovered that two buildings had been "broken into."

Deputy Rodriguez testified that someone appeared to have entered one building by prying off two metal bars that secured the door. Investigator Stoleny testified that "fresh" pry marks were found on the building. Chain saws, large sockets, hand tools, and a cutting torch and green cart were found to be missing from the building. Investigator Stoleny testified that fresh "tire tracks," consistent with those that would have been made by the missing cutting torch and green cart, led from the building to a gate where the chain

2

securing the gate had been cut, then to another building. The second building had also been broken into. Investigator Stoleny testified that someone had broken into the second building by using the cutting torch taken from the first building to cut off the "hasp" that secured the door. Chain saws, pole saws, and hand tools were taken from the second building. The tire tracks then led from the second building to the roadway. Investigator Stoleny was unable to locate any fingerprints or footprints at or around the Precinct 3 buildings.

**B.      Zbranek's Residence**

Investigator Stoleny testified that Zbranek had been suspected in "a number of burglaries," including the prior Precinct 3 burglary; therefore, Investigator Stoleny continued his investigation by driving to Zbranek's residence to ask Zbranek whether he knew anything about the recent burglary. At approximately 10:00 a.m., Investigator Stoleny drove by Zbranek's residence and saw Precinct 3's green cart in the open bed of Zbranek's truck. Investigator Stoleny called and met Deputy Rodriguez; the two officers returned to Zbranek's residence and parked behind his truck. As the officers walked to the door of Zbranek's residence, they observed that the "green cart [was] partially covered up and the tailgate wasn't totally closed because the way the torch and the cart was [sic] in, it wouldn't shut;" the tailgate had been tied closed with a rope. The officers also observed a drill and charger that matched the description of stolen Precinct 3 property in the bed of Zbranek's truck.

Investigator Stoleny testified that he approached the door of Zbranek's residence, and asked Zbranek's son if he could speak to Zbranek about "some stuff" in his truck. When Zbranek came out of the house, Investigator Stoleny informed him that he was there to talk to Zbranek "about some stuff." Zbranek responded, "Oh, shit. That's not

3

good." Deputy Rodriguez testified that Zbranek looked like he had been asleep and, although "pretty cooperative," was "nervous and shaking."

Zbranek and the officers walked over to the truck, and Investigator Stoleny pointed out items in the truck's bed and informed Zbranek that those items had been reported stolen. Zbranek responded, "Well, get it out of here." The officers asked Zbranek if there were any other stolen items, and Zbranek told them, "No." Zbranek consented to a search of his truck's interior. The officers located an impact wrench marked "Precinct 3" on the floorboard of the front seat, and in the backseat, they found a Makita saw that matched the description of one stolen from Precinct 3. In the backseat, the officers also found a grease gun, marked "Wastewater Number 40," that matched the description of a grease gun recently stolen from the City of George West water plant. The officers also found: (1) various screwdrivers and pliers; (2) two pairs of gloves; (3) a hat; (4) a light capable of being strapped onto a person's head; and (5) Zbranek's Craftsman toolbox. Zbranek then consented to a search of his residence by the officers, but no additional stolen property was found. When asked if he had "an idea" how Precinct 3's property ended up in his vehicle, Zbranek responded that he "guessed the gremlins put it in there."

Zbranek then signed a property release and allowed the officers to take his truck and the stolen property to the sheriff's office. At the sheriff's office, Commissioner Basset affirmatively identified the aforementioned property found in Zbranek's truck as belonging to Precinct 3. The officers also found a pry bar with red primer marks on it inside Zbranek's Craftsman toolbox. Zbranek told Investigator Stoleny that the pry bar looked like one that he owned. No fingerprints were found on the pry bar or the Precinct 3 property discovered in Zbranek's truck.

4

On July 22, 2008, a jury found Zbranek guilty of burglary of a building, and the court assessed punishment at ten years' imprisonment, and ordered him to pay restitution in the amount of $3,800 and court costs. This appeal ensued.

## II. FACTUAL SUFFICIENCY

In his sole issue, Zbranek contends that the evidence is factually insufficient to support his conviction because "[t]here simply is no evidence that [he] entered the Precinct 3 buildings."

### A. Standard of Review

We conduct a factual sufficiency review of the evidence by viewing all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We will set aside the verdict only if: (1) the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence. *Roberts*, 220 S.W.3d at 524; *Watson*, 204 S.W.3d at 414-15. A "high level of skepticism about the jury's verdict" is required before we may reverse on factual insufficiency grounds. *Steadman*, 208 S.W.3d at 247 (quoting *Watson*, 204 S.W.3d at 417).

### B. Applicable Law

We measure the factual sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Hernandez v. State*, 190 S.W.3d 856, 863 (Tex. App.–Corpus

5

Christi 2006, no pet.). In the present case, under a hypothetically correct jury charge, the jury was required to find, beyond a reasonable doubt, that: (1) Zbranek, (2) on or about January 22, 2008, (3) intentionally or knowingly, (4) entered a building, (5) not then open to the public, (6) without the owner's effective consent, and (7) committed a felony or theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(1), (3); *Hernandez*, 190 S.W.3d at 863.

## C.  Analysis

In support of his factual sufficiency challenge, Zbranek argues that: (1) no eyewitnesses testified that he burglarized the buildings; (2) his fingerprints were not found at the crime scene or on the stolen property; (3) his footprints were not found at the crime scene; and (4) all of the property reported to have been stolen was not recovered, and no stolen property was found in his house. We construe these arguments as challenging the factual sufficiency of the evidence required to establish the identity element of burglary. Other than the lack of direct evidence highlighted by Zbranek's aforementioned arguments, he points us to no additional contradictory evidence, and we find none. We therefore must determine whether, in light of these arguments, the evidence supporting the conviction is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or the verdict is against the great weight and preponderance of the evidence. *See Roberts*, 220 S.W.3d at 524; *see also Watson*, 204 S.W.3d at 414-15.

Identity can be established by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). Identity may even be proven by inferences. *Roberson v. State*, 16 S.W.3d 156, 167 (Tex. App.–Austin 2000, pet. ref'd). Moreover, a defendant's unexplained possession of property recently stolen in a burglary permits an inference that the defendant is the one who committed the burglary. *Rollerson v. State*,

6

227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). In other words, a defendant's guilt of burglary may be inferred where the State presents evidence of the defendant's personal, recent, and unexplained possession of the stolen property. *See Poncio*, 185 S.W.3d at 905.

The State presented evidence that bars on the door of a Precinct 3 buildings were pried off. Testimony established that marks on the building were "fresh" pry marks. A pry bar was found in a Craftsman toolbox inside the cab of Zbranek's truck. Zbranek told officers that he was the owner of both the toolbox and the pry bar. Upon direct examination by the State, Deputy Thompson opined that the pry marks found on the precinct building "matched" those capable of being produced by the pry bar found in Zbranek's tool box because the width of the pry bar's blade was consistent with the width of the marks. Additionally, the color of primer found on the pry bar was the same color as the primer chipped from the damaged area of the precinct building.

The State also presented evidence that the recently stolen property was in Zbranek's possession. The State presented evidence that the Precinct 3 buildings were burglarized sometime between 4:00 p.m., Sunday, January 20, 2008, and 7:00 a.m., Tuesday, January 22, 2008. Investigator Stroleny testified that at approximately 10:00 a.m. on January 22, 2008, he saw, in plain view, a green cart, drill, battery charger, and cutting torch, in the bed of Zbranek's truck. Investigator Stroleny recognized these items as property reported stolen from the Precinct 3 buildings. After obtaining Zbranek's consent to search the cab of the truck, Investigator Stroleny discovered an impact wrench marked "Precinct 3" on the floorboard of the front seat, and in the backseat he found a Makita saw that matched the description of one stolen from Precinct 3. Investigator Stroleny testified

that the Makita saw did not appear to have been "thrown in" the truck, but rather "was placed in standing up behind the seat." In the front seat of Zbranek's truck, Investigator Stroleny also found: (1) various screwdrivers and pliers; (2) two pairs of gloves; (3) a hat; (4) a light capable of being strapped onto a person's head; and (5) Zbranek's Craftsman toolbox, later found to contain a pry bar. When the officers informed Zbranek that the property in his truck was stolen he replied, "Well, get it out of here." When asked how the stolen property ended up in his truck, Zbranek offered no explanation other than that he "guessed the gremlins put it in there."

Viewing the evidence in a neutral light, we conclude that the circumstantial evidence of Zbranek's identity is not clearly wrong and manifestly unjust, and the jury's verdict is not against the great weight and preponderance of the evidence. *See Roberts*, 220 S.W.3d at 524. We, therefore, conclude that a rational jury could have found beyond a reasonable doubt that Zbranek committed the offense of burglary of a building.

### III. MODIFICATION OF TRIAL COURT'S JUDGMENT

The trial court's judgment mistakenly refers to Texas Penal Code section 39.02(c)(1), which governs the offense of abuse of official capacity, as the statute concerning the offense of burglary of a building. *See* TEX. PENAL CODE ANN. § 39.02(c)(1) (Vernon 2003). The offense of abuse of official capacity is not referred to or charged at any other place in the record. Moreover, under the heading "Offense for which Defendant Convicted," the judgment states, "BURGLARY OF A BUILDING." Because we have the necessary data and evidence for reformation, we modify the trial court's judgment to reflect the correct statute for the offense—Texas Penal Code section 30.02(c)(1). *See* TEX. PENAL CODE ANN. § 30.02(c)(1); TEX. R. APP. P. 43.2; *Bigley v. State*, 865 S.W.2d 26, 27

8

(Tex. Crim. App. 1993).

## IV. CONCLUSION

Having overruled Zbranek's sole issue, we affirm the trial court's judgment as modified.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish. TEX. R. APP. P. 47.2(b)
Memorandum Opinion delivered and
filed this 26th day of August, 2009.

9