NO. 07-07-0076-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

AUGUST 20, 2008

_____


TRACY LYNN WARE, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 17,603-C; HON. ANA ESTEVEZ, PRESIDING

_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

**Memorandum Opinion**

In this appeal, appellant Tracy Lynn Ware seeks reversal of his conviction of delivery of a controlled substance in a drug-free zone and the resulting punishment of forty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice. In doing so, he presents five issues for our decision. In those issues, he argues: 1) and 2) the evidence is legally and factually insufficient to support the conviction; 3) the

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon 2008).

trial court erred by overruling his motion to dismiss the complaint because of a violation of article 32.01 of the Texas Code of Criminal Procedure; and 4) and 5) he received ineffective assistance of trial counsel because of counsel's failure to properly pursue appellant's *pro se* motion to dismiss the prosecution due to a violation of article 32.01 of the Texas Code of Criminal Procedure which he filed prior to the appointment of his trial counsel. Disagreeing that reversible error is shown, we affirm the judgment of the trial court.

Logical continuity requires that we initially discuss appellant's issues three, four and five inasmuch as they deal with pretrial matters. In relevant part, article 32.01 of the Code of Criminal Procedure provides "[w]hen a defendant has been detained in custody or held to bail for his appearance to answer any criminal accusation, the prosecution, unless ordered by the court, for good cause shown, supported by affidavit, shall be dismissed and the bail discharged, if indictment or information be not presented against such defendant on or before the last day of the next term of the court which is held after his commitment or admission to bail or on or before the 180[th] day after the date of commitment or admission to bail, whichever is later." Tex. Code Crim. Proc. Ann. art. 32.01 (Vernon 2006). Parenthetically, the dismissal is not automatic as the State does have the right to show good cause for the failure to comply with the time requirement of article 32.01.

The record reflects that appellant was first charged in a November 2005 complaint but was not actually indicted until June 14, 2006. Thus, after the expiration of 180 days from the date he was first charged, appellant was entitled to a dismissal of the complaint, and, arguably, entitled to be discharged from custody. He filed a *pro se* motion seeking dismissal on May 30, 2006, and, one day later, an attorney was appointed to represent

2

him. However, subsequent to the appointment of his attorney, no hearing was scheduled or held regarding appellant's motion to dismiss, and, on June 13, 2006, he filed a motion seeking to remove his attorney because of an alleged failure to properly pursue the dismissal motion. Appellant was then indicted on June 14, 2006, thereby mooting his motion to dismiss. It is the alleged failure of his attorney to pursue that motion that gives rise to appellant's claims of deprivation of constitutional rights and ineffective assistance of counsel.

In *Ex parte Countryman*, 226 S.W.3d 435 (Tex. Crim. App. 2007), the Court had occasion to consider the effect of a failure to return an indictment within the time limits prescribed by article 32.01. In that case, because of such a failure, the appellant filed an application for writ of habeas corpus to have the prosecution dismissed. After the filing of the application, but before the trial court held a hearing on the writ application, an indictment was returned. The trial court denied the writ giving rise to an appeal. The Court of Appeals reversed the trial court and ordered the dismissal of the indictment because of the failure to indict within the 180-day time period. En route to reversing the Court of Appeals' decision, the Court of Criminal Appeals held that in the face of an otherwise timely indictment, the failure to return an indictment within the 180-day period was not fatal to the prosecution. *Id.* at 438-39. It is true that in *Countryman*, the appellant was confined under a "blue warrant" for a parole violation and would not have been released from confinement even if his motion had been granted. However, the Court's discussion of the effect of a failure to comply with article 32.01 is still cogent and applicable. Thus, the failure to return an indictment within the 180-day period would not have required the dismissal of the proceeding so long as the indictment was timely returned.

In the seminal case of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as adopted by our Court of Criminal Appeals in *Hernandez v. State*, 726 S.W.2d 53, 56-57 (Tex. Crim. App. 1986), the Court set out the test that must be satisfied to establish an ineffective assistance of counsel claim. To show that trial counsel was ineffective, an appellant must demonstrate that: 1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness; and 2) a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The judicial scrutiny of counsel's performance must be highly deferential and a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and that counsel's conduct might be considered sound trial strategy. *Strickland v. Washington,* 466 U.S. at 687- 689; *Young v. State*, 991 S.W.2d 835, 837 (Tex. Crim. App. 1999). Thus, in this case, to demonstrate ineffective assistance of counsel, appellant must have shown that a properly prepared and diligent attorney would have convinced the trial court to grant his motion to dismiss pursuant to article 32.01.

As we have noted, appellant contends that his trial counsel was ineffective because he failed to pursue appellant's *pro se* motion to dismiss pursuant to article 32.01 of the Code of Criminal Procedure. However, failure to file or pursue pretrial motions generally does not *per se* demonstrate ineffective assistance of counsel. For example, it has been held that the failure to file a suppression motion or obtain a ruling on such a motion does not, in and of itself, demonstrate ineffective assistance. *Wills v. State*, 867 S.W.2d 852,

4

857 (Tex. App.–Houston [14ᵗʰ Dist.] 1993, pet. ref'd); *Yuhl v. State*, 784 S.W.2d 714, 717 (Tex. App.–Houston [14ᵗʰ Dist.] 1990, pet. ref'd).

If an appellant fails to make a showing that a ruling on a pretrial motion would have changed anything in the case, he has failed to establish ineffective assistance. *Roberson v. State*, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993). Additionally, even assuming that trial counsel should have presented appellant's pre-indictment motion to dismiss, appellant must have shown how he was prejudiced by the failure, for example, by showing that a "properly prepared attorney" would have persuaded the trial court to grant the motion. *See Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (holding appellant is required to show the motion to suppress would have been granted to demonstrate ineffective assistance of counsel).

The record shows that appellant filed his motion to dismiss on May 30, 2006. Counsel for appellant was appointed on June 1, 2006. The indictment was returned on June 14, 2006. Because the indictment was timely returned, appellant's motion became moot, and would not have been granted under the circumstances we have iterated above. Accordingly, appellant has not satisfied his burden to show ineffective assistance on this ground. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Additionally, we have carefully reviewed the record, and, from the totality of counsel's actions, it is clear that appellant did receive effective assistance of counsel. Trial counsel properly and successfully argued pretrial matters before the trial court, appropriately and effectively cross-examined the State's witnesses, and made appropriate objections at various points in the proceedings. Moreover, counsel presented persuasive

5

closing arguments. In sum, appellant did receive effective trial representation. Thus, his issues three, four, and five do not present reversible error and are overruled.

We next move to consider appellant's contentions that the evidence produced at trial was legally and factually insufficient to support his conviction. When such a two-fold challenge is presented, we must first determine whether the evidence is legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In considering that challenge, we must review all the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, 573 (1979); *McKinney v. State*, 207 S.W.3d 366, 374 (Tex. Crim. App. 2006). In doing so, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is irrational or supported by no more than a mere modicum of evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

Even so, evidence supporting guilt, though legally sufficient, may be factually insufficient because it is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or because evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). In conducting our factual sufficiency review, we must remember that it is the exclusive province of the jury to determine the credibility of the witnesses and the weight to be given their testimony, and unless the record demonstrates a different result is appropriate, we must defer to the jury's determination. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

6

In this case, appellant was charged with intentionally or knowingly delivering, by making an actual transfer from himself to David Ponce, cocaine in an amount of more than four grams but less than 200 grams. Thus, the State had the burden to prove beyond a reasonable doubt that appellant 1) intentionally or knowingly; 2) delivered by actual transfer to David Ponce; 3) cocaine in an amount more than four grams but less than 200 grams. Tex. Health & Safety Code Ann. §481.115(d) (Vernon 2003). At trial, the State proceeded under the theory that appellant was a party to the offense. To convict under the law of parties, the State must have shown that appellant acted with the intent to promote or assist the offense by soliciting, encouraging, directing, aiding or attempting to aid the other person in the commission of the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). Thus, to establish delivery of a controlled substance as a party, the State must have established that 1) another person possessed the contraband with the intent to deliver; and, 2) that the defendant, with the intent that the offense be committed, solicited, encouraged, directed, aided, or attempted to aid the other's possession. *Woods v. State*, 998 S.W.2d 633, 636 (Tex. App.–Houston [1st Dist.] 1999, pet. ref'd). Knowledge of the presence of the cocaine is a required element for conviction both as a principal and as a party to the offense. *Robinson v. State*, 174 S.W.3d 320, 325 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd).

At trial, the State presented evidence through witness testimony, video and audio surveillance, photographs, and tangible evidence, that on November 17, 2005, the date in question, Officer David Ponce, a narcotics agent, who averred that he had purchased narcotics previously from Glen Hooper, had arranged with Hooper by telephone, in a "buy-bust" operation, to purchase $4,000 worth of crack cocaine. The surveillance tape showed

7

appellant sitting in a red Monte Carlo automobile in a parking lot at an apartment complex which was later discovered to be appellant's residence. Appellant was approached by Hooper, then carrying a small child, and a brief conversation ensued. Hooper then took the child to some unidentified location and returned to the car which was operated by appellant. Appellant and Hooper left the apartment complex and then later returned to the parking lot. Upon their return, Hooper got out of the automobile, and got into a vehicle driven by Officer Ponce. As he did so, there was testimony that Officer Ponce looked over to the red Monte Carlo, and he and appellant waved and greeted each other.

While Hooper was in the officer's car, the officer paid money to Hooper and received some crack cocaine. At that time, another law enforcement agent gave a signal and an arrest team moved in and arrested both appellant and Hooper. The evidence established that the cocaine received by Officer Ponce was in an amount of at least four but less than 200 grams. It was also established that the transaction took place within 1000 feet of a premises operated by a school.

In testimony regarding the relationship between appellant and Hooper, the State presented the testimony of Carol McKnight, appellant's ex-girlfriend. Ms. McKnight averred that appellant lived with her at the apartment complex where the transaction took place. She also testified that Hooper stayed overnight at the apartment she shared with appellant. She said that neither appellant nor Hooper had a job while she knew them and that Hooper obtained his income from selling crack cocaine. She also averred that appellant and Hooper had discussions about selling crack cocaine and that she witnessed conversations between appellant and Hooper concerning a sale that would take place in November 2005 to Officer Ponce (known as "Big Dave"), and that Hooper told appellant that the sale was

8

a "big lick" and that when the sale was complete, he, Hooper, would "half" the profit. She also testified that in correspondence with appellant after his arrest, appellant admitted his knowledge of the deal but said that he couldn't be convicted because all he did was drive the car and that he was going to pretend that he didn't know anything about the transaction.

Hooper testified and denied that appellant had anything to do with the sale. Officer Vernon Wilson testified that he was working as an undercover narcotics agent at the time in question and he was standing next to appellant while he was handcuffed and that appellant did not personally deliver any drugs and he did not see appellant handling either the drugs or money involved in the transaction.

Summarized, the testimony in the case was conflicting as to appellant's participation in the drug transaction. The State's evidence, if accepted by the jury, was sufficient to show that appellant resided at the apartment complex where the transaction took place. It was undisputed that Hooper was involved in a previously set up drug purchase and delivery. The State presented testimony that Hooper had been involved in previous drug transactions, that appellant had talked to Hooper about the drug transaction before it took place and was to receive part of the purchase price of the drugs, that appellant was the driver of the vehicle in which the drugs were transported, that he drove to and remained at the scene prior to and during the transaction, and that he remained in the car with the engine running while Hooper delivered the drugs to Officer Ponce. The State also produced Ms. McKnight's averment that appellant had admitted his knowledge of the transaction.

Reiterated, as the factfinder, the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Hernandez v. State*, 190 S.W.3d 856, 863-64 (Tex. App.–Corpus Christi 2006, no pet.). In performing that function, the jury is free to accept one version of the facts, reject another, or accept all or a part of a witness's testimony. Our review of the record clearly shows that the jury acted well within its province in concluding appellant was guilty of the charge against him. Appellant's first two points are overruled.

In final summary, all of appellant's points of error are overruled, and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Quinn, C.J., concurs in result.

Do not publish.