NUMBER 13-08-00534-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 

 

MICHAEL LEE ZBRANEK, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 156th District Court

Live Oak County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Benavides


Memorandum Opinion by Chief Justice Valdez
 Appellant, Michael Lee Zbranek, appeals his jury conviction for the offense of
burglary of a building, a state jail felony. See Tex. Penal Code Ann. § 30.02(a), (c)(1)
(Vernon 2003). After finding two enhancement allegations "true," the trial court sentenced
Zbranek to ten years' imprisonment, and ordered him to pay restitution in the amount of
$3,800 and court costs. In a single issue, Zbranek challenges the factual sufficiency of the
evidence supporting his conviction. We modify the judgment, and as modified, affirm.

I. Background

 Shortly after 7:00 a.m. on January 22, 2008, Jimmy Basset, Live Oak County
Commissioner for Precinct 3, and his employee, Manuel Lozano, called police after finding 
that two Precinct 3 buildings had been broken into. Upon responding to the call, Deputy
Joey Rodriguez and Investigator Charlie Stroleny found that two metal storage buildings
had been broken into, and various equipment and power tools belonging to Precinct 3 were
missing.

A. Precinct 3 Buildings

 Commissioner Basset testified that six to eight weeks before the January 22
incident, someone had broke into the Precinct 3 buildings and stole equipment valued at
approximately $3,800. Extra security measures, such as reinforced locks, were installed
on the buildings, and Commissioner Basset "made it a practice" of driving by the buildings,
often at night, to ensure that they were secure. Around 4:00 p.m. on Sunday, January 20,
2008, Commissioner Basset checked the doors and locks of the buildings, and found them
secure. Because Monday, January 21, was a county holiday, county employees did not 
report to work. Upon arriving at the buildings shortly before 7:00 a.m. on Tuesday, January
22, Commissioner Basset and Lozano discovered that two buildings had been "broken
into."

 Deputy Rodriguez testified that someone appeared to have entered one building by
prying off two metal bars that secured the door. Investigator Stoleny testified that "fresh"
pry marks were found on the building. Chain saws, large sockets, hand tools, and a cutting
torch and green cart were found to be missing from the building. Investigator Stoleny
testified that fresh "tire tracks," consistent with those that would have been made by the
missing cutting torch and green cart, led from the building to a gate where the chain
securing the gate had been cut, then to another building. The second building had also
been broken into. Investigator Stoleny testified that someone had broken into the second
building by using the cutting torch taken from the first building to cut off the "hasp" that
secured the door. Chain saws, pole saws, and hand tools were taken from the second
building. The tire tracks then led from the second building to the roadway. Investigator
Stoleny was unable to locate any fingerprints or footprints at or around the Precinct 3
buildings. 

B. Zbranek's Residence

 Investigator Stoleny testified that Zbranek had been suspected in "a number of
burglaries," including the prior Precinct 3 burglary; therefore, Investigator Stoleny continued
his investigation by driving to Zbranek's residence to ask Zbranek whether he knew
anything about the recent burglary. At approximately 10:00 a.m., Investigator Stoleny
drove by Zbranek's residence and saw Precinct 3's green cart in the open bed of Zbranek's
truck. Investigator Stoleny called and met Deputy Rodriguez; the two officers returned to
Zbranek's residence and parked behind his truck. As the officers walked to the door of
Zbranek's residence, they observed that the "green cart [was] partially covered up and the
tailgate wasn't totally closed because the way the torch and the cart was [sic] in, it wouldn't
shut;" the tailgate had been tied closed with a rope. The officers also observed a drill and
charger that matched the description of stolen Precinct 3 property in the bed of Zbranek's
truck.

 Investigator Stoleny testified that he approached the door of Zbranek's residence,
and asked Zbranek's son if he could speak to Zbranek about "some stuff" in his truck. 
When Zbranek came out of the house, Investigator Stoleny informed him that he was
there to talk to Zbranek "about some stuff." Zbranek responded, "Oh, shit. That's not
good." Deputy Rodriguez testified that Zbranek looked like he had been asleep and,
although "pretty cooperative," was "nervous and shaking."

 Zbranek and the officers walked over to the truck, and Investigator Stoleny pointed
out items in the truck's bed and informed Zbranek that those items had been reported
stolen. Zbranek responded, "Well, get it out of here." The officers asked Zbranek if there
were any other stolen items, and Zbranek told them, "No." Zbranek consented to a search
of his truck's interior. The officers located an impact wrench marked "Precinct 3" on the
floorboard of the front seat, and in the backseat, they found a Makita saw that matched the
description of one stolen from Precinct 3. In the backseat, the officers also found a grease
gun, marked "Wastewater Number 40," that matched the description of a grease gun
recently stolen from the City of George West water plant. The officers also found: (1)
various screwdrivers and pliers; (2) two pairs of gloves; (3) a hat; (4) a light capable of
being strapped onto a person's head; and (5) Zbranek's Craftsman toolbox. Zbranek then
consented to a search of his residence by the officers, but no additional stolen property
was found. When asked if he had "an idea" how Precinct 3's property ended up in his
vehicle, Zbranek responded that he "guessed the gremlins put it in there."

 Zbranek then signed a property release and allowed the officers to take his truck
and the stolen property to the sheriff's office. At the sheriff's office, Commissioner Basset
affirmatively identified the aforementioned property found in Zbranek's truck as belonging
to Precinct 3. The officers also found a pry bar with red primer marks on it inside Zbranek's
Craftsman toolbox. Zbranek told Investigator Stoleny that the pry bar looked like one that
he owned. No fingerprints were found on the pry bar or the Precinct 3 property discovered
in Zbranek's truck.

 On July 22, 2008, a jury found Zbranek guilty of burglary of a building, and the court
assessed punishment at ten years' imprisonment, and ordered him to pay restitution in the
amount of $3,800 and court costs. This appeal ensued.II. Factual Sufficiency

 In his sole issue, Zbranek contends that the evidence is factually insufficient to
support his conviction because "[t]here simply is no evidence that [he] entered the Precinct
3 buildings."

A. Standard of Review

 We conduct a factual sufficiency review of the evidence by viewing all the evidence
in a neutral light, favoring neither party. Steadman v. State, 280 S.W.3d 242, 246 (Tex.
Crim. App. 2009); Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); Watson
v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We will set aside the verdict only
if: (1) the evidence supporting the conviction, although legally sufficient, is nevertheless
so weak that the fact-finder's determination is clearly wrong and manifestly unjust; or (2)
the verdict is against the great weight and preponderance of the evidence. Roberts, 220
S.W.3d at 524; Watson, 204 S.W.3d at 414-15. A "high level of skepticism about the jury's
verdict" is required before we may reverse on factual insufficiency grounds. Steadman,
208 S.W.3d at 247 (quoting Watson, 204 S.W.3d at 417).

B. Applicable Law

 We measure the factual sufficiency of the evidence by the elements of the offense
as defined by a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234,
240 (Tex. Crim. App. 1997); Hernandez v. State, 190 S.W.3d 856, 863 (Tex. App.-Corpus
Christi 2006, no pet.). In the present case, under a hypothetically correct jury charge, the
jury was required to find, beyond a reasonable doubt, that: (1) Zbranek, (2) on or about
January 22, 2008, (3) intentionally or knowingly, (4) entered a building, (5) not then open
to the public, (6) without the owner's effective consent, and (7) committed a felony or theft. 
See Tex. Penal Code Ann. § 30.02(a)(1), (3); Hernandez, 190 S.W.3d at 863.

C. Analysis

 In support of his factual sufficiency challenge, Zbranek argues that: (1) no
eyewitnesses testified that he burglarized the buildings; (2) his fingerprints were not found
at the crime scene or on the stolen property; (3) his footprints were not found at the crime
scene; and (4) all of the property reported to have been stolen was not recovered, and no
stolen property was found in his house. We construe these arguments as challenging the
factual sufficiency of the evidence required to establish the identity element of burglary.
Other than the lack of direct evidence highlighted by Zbranek's aforementioned arguments,
he points us to no additional contradictory evidence, and we find none. We therefore must
determine whether, in light of these arguments, the evidence supporting the conviction is
nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly
unjust; or the verdict is against the great weight and preponderance of the evidence. See
Roberts, 220 S.W.3d at 524; see also Watson, 204 S.W.3d at 414-15. 

 Identity can be established by direct or circumstantial evidence. Earls v. State, 707
S.W.2d 82, 85 (Tex. Crim. App. 1986). Identity may even be proven by inferences.
Roberson v. State, 16 S.W.3d 156, 167 (Tex. App.-Austin 2000, pet. ref'd). Moreover,
a defendant's unexplained possession of property recently stolen in a burglary permits an
inference that the defendant is the one who committed the burglary. Rollerson v. State,
227 S.W.3d 718, 725 (Tex. Crim. App. 2007); Poncio v. State, 185 S.W.3d 904, 905 (Tex.
Crim. App. 2006). In other words, a defendant's guilt of burglary may be inferred where
the State presents evidence of the defendant's personal, recent, and unexplained
possession of the stolen property. See Poncio, 185 S.W.3d at 905.

 The State presented evidence that bars on the door of a Precinct 3 buildings were
pried off. Testimony established that marks on the building were "fresh" pry marks. A pry
bar was found in a Craftsman toolbox inside the cab of Zbranek's truck. Zbranek told
officers that he was the owner of both the toolbox and the pry bar. Upon direct
examination by the State, Deputy Thompson opined that the pry marks found on the
precinct building "matched" those capable of being produced by the pry bar found in
Zbranek's tool box because the width of the pry bar's blade was consistent with the width
of the marks. Additionally, the color of primer found on the pry bar was the same color as
the primer chipped from the damaged area of the precinct building.

 The State also presented evidence that the recently stolen property was in
Zbranek's possession. The State presented evidence that the Precinct 3 buildings were
burglarized sometime between 4:00 p.m., Sunday, January 20, 2008, and 7:00 a.m.,
Tuesday, January 22, 2008. Investigator Stroleny testified that at approximately 10:00 a.m.
on January 22, 2008, he saw, in plain view, a green cart, drill, battery charger, and cutting
torch, in the bed of Zbranek's truck. Investigator Stroleny recognized these items as
property reported stolen from the Precinct 3 buildings. After obtaining Zbranek's consent
to search the cab of the truck, Investigator Stroleny discovered an impact wrench marked
"Precinct 3" on the floorboard of the front seat, and in the backseat he found a Makita saw
that matched the description of one stolen from Precinct 3. Investigator Stroleny testified
that the Makita saw did not appear to have been "thrown in" the truck, but rather "was
placed in standing up behind the seat." In the front seat of Zbranek's truck, Investigator
Stroleny also found: (1) various screwdrivers and pliers; (2) two pairs of gloves; (3) a hat;
(4) a light capable of being strapped onto a person's head; and (5) Zbranek's Craftsman
toolbox, later found to contain a pry bar. When the officers informed Zbranek that the
property in his truck was stolen he replied, "Well, get it out of here." When asked how the
stolen property ended up in his truck, Zbranek offered no explanation other than that he
"guessed the gremlins put it in there."

 Viewing the evidence in a neutral light, we conclude that the circumstantial evidence
of Zbranek's identity is not clearly wrong and manifestly unjust, and the jury's verdict is not
against the great weight and preponderance of the evidence. See Roberts, 220 S.W.3d
at 524. We, therefore, conclude that a rational jury could have found beyond a reasonable
doubt that Zbranek committed the offense of burglary of a building. 

III. Modification of Trial Court's Judgment

 The trial court's judgment mistakenly refers to Texas Penal Code section
39.02(c)(1), which governs the offense of abuse of official capacity, as the statute
concerning the offense of burglary of a building. See Tex. Penal Code Ann. § 39.02(c)(1)
(Vernon 2003). The offense of abuse of official capacity is not referred to or charged at
any other place in the record. Moreover, under the heading "Offense for which Defendant
Convicted," the judgment states, "BURGLARY OF A BUILDING." Because we have the
necessary data and evidence for reformation, we modify the trial court's judgment to reflect
the correct statute for the offense--Texas Penal Code section 30.02(c)(1). See Tex.
Penal Code Ann. § 30.02(c)(1); Tex. R. App. P. 43.2; Bigley v. State, 865 S.W.2d 26, 27
(Tex. Crim. App. 1993).

IV. Conclusion

 Having overruled Zbranek's sole issue, we affirm the trial court's judgment as
modified.

 ________________________

 ROGELIO VALDEZ

 Chief Justice 

Do not Publish. Tex. R. App. P. 47.2(b)

Memorandum Opinion delivered and

filed this 26th day of August, 2009.