224 S.W.3d 233 (2005)
In the Matter of M.A.L., A Juvenile.
No. 08-04-00040-CV.
Court of Appeals of Texas, El Paso.
February 24, 2005.
M. Clara Hernandez, El Paso County Public Defender, for Appellant.
Jose R. Rodriguez, County Atty., El Paso, for State.
Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

OPINION
DAVID WELLINGTON CHEW, Justice.
This is an appeal from an order of adjudication, finding that M.A.L., a juvenile, engaged in delinquent conduct by committing the offense of burglary of a habitation. After a disposition hearing, the court entered an order committing M.A.L. to the Texas Youth Commission. On appeal, M.A.L. argues the evidence was legally and factually insufficient to justify the trial court's order of adjudication. We affirm.
On October 10, 2003, Flor Martinez, the complainant, left her home at 1520 Cezanne Circle in El Paso around 2:20 p.m. and returned around 4 p.m. Ms. Martinez and her boyfriend, Eduardo Garcia, found that the top bolt of the front door was locked, which was something they never *234 did because the lock would jam. When they finally got the door open, they realized that somebody was inside the house. Mr. Garcia ran to the back of the house and found that the sliding glass doors and a window were open and the screen was off the back window. Once Ms. Martinez was inside, she found that the following property was missing: a television, a VCR, a DVD, a remote, a camcorder, jewelry, bottles of liquor, and a coin collection. Ms. Martinez also noticed that the stereo had been moved and disconnected. Ms. Martinez testified that the property taken was hers and that she had not given anyone permission to take her property. She also testified that she did not know M.A.L. and never gave the juvenile permission to enter her home nor had she allowed him into her home.
On cross-examination, Ms. Martinez admitted that she initially suspected that her ex-husband was the culprit. She explained that at the time she was going through a divorce and it so happened that everything her husband was asking for was gone. That week, Mr. Garcia was in the process of moving in with her. Ms. Martinez thought that entry to her home was gained possibly through an unlocked window in the back, from which the screen had been removed.
On redirect, Ms. Martinez stated the stolen television, DVD, and VCR, were taken from an armoire. These items were all connected to a surge protector in the back of the armoire. Ms. Martinez explained that when she found the property missing, she called the police and then called her lawyer. Her lawyer told her to go ahead and let the police take fingerprints in order to rule out her ex-husband. Ms. Martinez assumed that the burglar left through the back door because the items taken would not have fit through the window.
Eduardo Garcia testified that on the day of the incident, he was living at the residence. He was with Ms. Martinez from the time they left the house that afternoon and upon their return. Mr. Garcia stated that he did not know M.A.L. and has never let the juvenile into the house. He also stated that he had only recently plugged the television, DVD, and VCR into the surge protector when he had moved in.
Officer Leonard Harris, Jr., a crime scene technician with the El Paso Police Department, was dispatched to Ms. Martinez's home to investigate the burglary. Officer Harris photographed the scene and processed the scene for latent fingerprints. The suspected point of entry to the home was the side window. Using black magnetic powder, Officer Harris lifted four latent fingerprints  three from the surge protector behind the armoire and one was from the interior of the sliding glass door. Officer Harris turned the prints over to the latent prints section of the police department.
Bruce Orndoff, a latent fingerprint examiner for the El Paso Police Department, received the latent print card from Officer Harris and ran the prints through the department's Automated Fingerprint Identification System. Officer Orndoff testified that one of the prints, a simultaneous impression of two fingers side by side from the surge protector, was of evidentiary value. The print positively matched the right, middle and ring fingers of M.A.L. On cross-examination, Officer Orndoff testified that it was not possible to determine the age of the prints on the surge protector.
M.A.L.'s mother testified in behalf of his defense. She stated that she never saw her son in possession of the property taken nor had she ever seen him in possession of property that did not belong to him. His mother also stated that the police never *235 searched her home in efforts to find any stolen property. On cross-examination, M.A.L.'s mother admitted that on October 21, 2003, M.A.L. was not residing with her and that she did not know where he was because he had run away. M.A.L. also called Officers Henry Rivera and Edward Mendoza who both testified that they did not know if there was any effort to locate the stolen property.
In two issues, M.A.L. challenges the legal and factual sufficiency of the evidence to support the trial court's finding that he engaged in delinquent conduct by committing the offense of burglary of a habitation.

Standards of Review
When reviewing challenges to the legal sufficiency of the evidence to establish the elements of the penal offense that forms the basis of the finding that the juvenile engaged in delinquent conduct, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); In Matter of A.S., 954 S.W.2d 855, 858 (Tex.App.-El Paso 1997, no pet.). The standard is the same for both direct and circumstantial evidence cases. Kutzner v. State, 994 S.W.2d 180, 184 (Tex.Crim.App. 1999). We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of the fact. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
When conducting a factual sufficiency review of the evidence, we consider all of the evidence, but we do not view it in the light most favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim. App.1996). There are two ways in which we may find the evidence to be factually insufficient. Zuniga v. State, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). Evidence is factually insufficient when the evidence supporting the finding of guilt, considered alone, is too weak to support the finding beyond a reasonable doubt. See id. Evidence is also insufficient when contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt. See id. at 485. However, in our factual sufficiency review, we must give appropriate deference to the trier of fact and should not intrude upon its role as the sole judge of the weight and credibility given to evidence presented at trial. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000); Clewis, 922 S.W.2d at 133. Accordingly, we are authorized to set aside the trier of fact's factual finding only in instances where it is manifestly unjust, shocks the conscience, or clearly demonstrates bias. See Clewis, 922 S.W.2d at 135.

Burglary of a Habitation
A person commits the offense of burglary of a habitation if, without the effective consent of the owner, he enters a habitation with the intent to commit a theft. See TEX.PEN.CODE ANN. 30.02(a)(1)(Vernon 2003). M.A.L. argues that the State failed to establish that he entered the house or that he had the intent to commit a theft. Specifically, M.A.L. points out that there were no witnesses placing M.A.L. in the vicinity at the time of the burglary, no clear evidence as to *236 when the fingerprints were made, and no evidence that he was ever in possession of any of the stolen items. Rather, M.A.L. asserts that the evidence only shows his mere presence at the scene, which does not support a finding of intent to commit theft.
Viewing the evidence is the light most favorable to the trial court's finding, the evidence shows that on the day in question, someone broke into Ms. Martinez's home and stole numerous items, including a television, DVD, and VCR, which were kept in an armoire and had been connected to a surge protector behind the armoire. Ms. Martinez testified that she did not give anyone permission to take her property and never gave consent to M.A.L. to enter her home. Mr. Garcia stated that he did not know M.A.L. and never let the juvenile into the house. Mr. Garcia had only recently plugged the television, DVD, and VCR into the surge protector. However, the only evidence linking M.A.L. to the crime were two fingerprints on the surge protector, which were found to be a positive match to M.A.L.
The mere possibility that a defendant's fingerprints may have been left at a time other than the time of the offense does not necessarily render the evidence insufficient. Phelps v. State, 594 S.W.2d 434, 436 (Tex.Crim.App.1980). Whether fingerprint evidence, standing alone, is sufficient to sustain a conviction will depend upon the facts and circumstances of each case. Id. One of the most important factors in evaluating the sufficiency of fingerprint evidence is the extent to which the fingerprinted object was accessible to the defendant. Id.; Villarreal v. State, 79 S.W.3d 806, 811 (Tex.App.-Corpus Christi 2002, pet. ref'd).
In this case, M.A.L.'s fingerprints were found on the surge protector behind the armoire, which was located in Ms. Martinez's house. The trier of fact could reasonably infer that the surge protector was out of sight and not accessible to visitors in the home. Moreover, neither Ms. Martinez nor Mr. Garcia knew M.A.L. and both testified that they never gave him permission to enter the house. Since their testimony indicates that M.A.L. had no opportunity to be present in their home prior to the burglary, a strong inference arises that the only time that M.A.L. could have been in their home and placed his hand on the surge protector was at the time of the burglary.
Further, there is evidence which supports the element of intent to commit theft. The testimony established that the stolen television, DVD, and VCR had been connected to the surge protector. Intent to commit theft may be inferred from the defendant's conduct and surrounding circumstances. In the Matter of A.S., 954 S.W.2d at 859; see also Ortega v. State, 626 S.W.2d 746, 749 (Tex.Crim.App.1981)(question of intent to commit theft is a fact question which a jury can resolve from the surrounding circumstances). From the circumstances, the jury in this case could have reasonably inferred that M.A.L., in making contact with the surge protector, was the individual that unplugged the electronic equipment and took the items from Ms. Martinez's house. Despite M.A.L.'s contentions, the State was not required to show there were witnesses to the crime or that M.A.L. was found in possession of the stolen items. While Mr. Garcia's testimony does not establish with certainty when the surge protector was placed behind the armoire or where the surge protector came from, we find that the evidence taken as a whole negates the probability that M.A.L.'s fingerprints were made prior to the time of the burglary. See Phelps, 594 S.W.2d at 436. We conclude that the evidence was *237 legally sufficient to support the trial court's finding that M.A.L. engaged in delinquent conduct by committing the offense of burglary of a habitation. Further, after viewing the evidence in a neutral light, we conclude that the evidence of guilt, considered alone, is not too weak to support the guilty finding beyond a reasonable doubt nor is the contrary evidence strong enough that the beyond-a-reasonable doubt standard was not met. Therefore, we also conclude that the evidence is factually sufficient. Issues One and Two are overruled.
We affirm the trial court's order.