**Affirmed and Memorandum Opinion filed July 24, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00779-CR

**KENNETH WAYNE WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 338th District Court
Harris County, Texas
Trial Court Cause No. 1245758**

## MEMORANDUM OPINION

Appellant, Kenneth Wayne Washington, appeals his conviction for burglary of a habitation with intent to commit theft and his sentence of seventy-five years' incarceration, which was enhanced by two prior felony convictions. In a single issue on appeal, appellant claims the evidence is insufficient to support his conviction. We affirm.

### BACKGROUND

On October 24, 2009, the complainant, Jed Begnaud, was living in a first floor apartment with his father. Begnaud's father was on business trip out of the country. Begnaud left at about 1:00 p.m. to go to a concert in The Woodlands and returned a little

before midnight. When Begnaud left for the concert, the windows and door were shut and locked. When he returned home, Begnaud found the front door unlocked. When Begnaud entered the apartment, he saw that his laptop in the living room was missing. Begnaud then looked around and found that other items were missing, including his shotgun, acoustic electric guitar, two DVD players, controllers for his Playstation, and backpack containing sunglasses and a radar detector. Begnaud noticed that the window in the dining room was broken and called 911.

Harris County Deputy Robert Noack, who responded to the call, found an inch-long blood stain on the drawstring to the blinds on the broken window. Noack recovered the blood-stained drawstring and submitted it for DNA testing. Noack testified that, "[j]udging by the color" and past experience, the blood on the drawstring "appeared to be fresh." Noack looked for blood elsewhere in the apartment, but did not find any. Noack noticed that certain items appeared to be out of place and furniture had been moved around. "Items in the closet had been moved around. It looked like someone was looking for something." A window screen was bent and lying inside the bedroom.

Noack also collected fingerprint evidence from the broken glass in the apartment. Deputy Maurice Carpenter of the Harris County Sheriff's Office examined nine fingerprint cards but found the latent prints to be of insufficient quality to make any identification.

After appellant had been identified as a suspect, a saliva sample was taken from him with his consent and submitted for DNA analysis. Jennifer Petrash, a DNA analyst with the Harris County Institute of Forensic Sciences, testified that the DNA profile obtained from the blood on the drawstring is consistent with the DNA profile obtained from the saliva sample taken from appellant. No DNA of any other person was found.

Begnaud testified that no maintenance had been done to the dining room window, and he had not noticed that the drawstring had blood on it before the date of the burglary. Begnaud did not know when or how the blood came to be on the drawstring. Begnaud

2

testified that he did not know or recognize appellant and he had not given appellant permission to enter his apartment on October 24, 2009. Only Begnaud and his father had keys to the apartment. Begnaud had lived there for about a year and a month.

Appellant presented the testimony of his friend, Karyl Paige. Paige testified that she had known appellant for two years and appellant stayed at her home during October 2009. Paige stated that appellant, who had a car, did odd jobs for her, a neighbor, and the church. Karyl testified that appellant had "hemorrhoid problems" that "would incapacitate him for a few hours twice a week." Paige took him the hospital twice, but she could not say on what dates. Paige never found any pawn shop slips or items such as a shotgun, laptop, television, or guitar in her home that did not belong to her.

The jury found appellant guilty of burglary of a habitation with intent to commit theft. Appellant's sentence was enhanced by two prior felony convictions, and the jury assessed his punishment at seventy-five years' incarceration.

### ANALYSIS

In his sole issue on appeal, appellant challenges the legal and factual sufficiency of the evidence supporting his conviction. Prior to the filing of this appeal, the Texas Court of Criminal Appeals held that the *Jackson v. Virginia*, 443 U.S. 307 (1979), legal sufficiency standard is the only standard to evaluate the sufficiency of the evidence in a criminal case. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *id.* at 926 (Cochran, J., concurring). Accordingly, we review the sufficiency of the evidence under the *Jackson v. Virginia* sufficiency standard. *Brooks*, 323 S.W.3d at 906 (plurality opinion).

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences from it, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *see also Jackson*, 443 U.S. at 319. The jury is the exclusive

judge of the credibility of witnesses and the weight to be given the evidence. *See Isassi v. State,* 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Further, we defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence. *Id.* We draw all reasonable inferences from the evidence in favor of the verdict. *Id.* This standard applies to both circumstantial and direct evidence. *Id.*

Specifically, appellant contends the fact that his DNA was present in the residence on October 24, 2009, is not sufficient to prove that he was the person who actually entered the residence and stole Begnaud's property. The elements of the offense of burglary of a habitation with intent to commit theft are (1) a person (2) without the effective consent of the owner (3) enters a habitation (4) with the intent to commit the felony of theft. TEX. PEN. CODE ANN. § 30.02(a)(1) (West 2011).

"Enter" means to "intrude (1) any part of the body; or (2) any physical object connected with the body." *Id.* § 30.02(b). The State may prove entry through circumstantial evidence. *Rollerson v. State*, 196 S.W.3d 810, 813 (Tex. App.—Texarkana 2006, no pet.); *Hernandez v. State*, 190 S.W.3d 856, 865 (Tex. App.—Corpus Christi 2006, no pet.); *Phillips v. State*, 178 S.W.3d 78, 81 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

A person acts with intent "with respect to the nature of his conduct . . . when it is his conscious objective or desire to engage in the conduct . . . ." TEX. PEN. CODE ANN. § 6.03(a) (West 2011). The specific intent to commit theft may be inferred from the circumstances. *Stine v. State*, 300 S.W.3d 52, 57 (Tex. App.—Texarkana 2009, pet. dism'd, untimely filed); *Simcoe v. State*, 268 S.W.3d 84, 89 (Tex. App.—Austin 2007, pet. ref'd); *see also Ortega v. State,* 626 S.W.2d 746, 749 (Tex. Crim. App. 1981) ("[T]he question of intent with which a person enters a building is a fact question which a jury can resolve from the surrounding circumstances.").

"[W]hen a burglary is committed, the harm results from the entry itself." *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). The offense is complete once

4

the unlawful entry is made without regard to whether the intended theft or felony is also completed. *Id.*; *Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994); *see also Phillips v. State*, 538 S.W.2d 116, 117 (Tex. Crim. App. 1976) ("[T]he actual commission of a theft is not a prerequisite to the commission of burglary.").

DNA analysis established that appellant's blood was found inside Begnaud's apartment—on the drawstring of the blinds of the broken window that was the point of entry. Noack testified that by the color of the blood and in his experience, the blood on the drawstring was "fresh." Begnaud testified that no maintenance work had been done on the window and he had not seen the blood stain before the burglary. Begnaud described a number of items that were missing and had been stolen. Begnaud stated that he had lived in that apartment for over a year, and only he and his father had keys to the apartment. Begnaud testified that he did not know or recognize appellant and had not given appellant consent to enter his apartment.

Appellant's friend, Karyl Paige, testified that appellant had "hemorrhoid problems" that "would incapacitate him for a few hours twice a week," and she took him the hospital twice. However, Paige could not say on what dates she took him to the hospital, and her testimony did not show that appellant was incapacitated on October 24, 2009.

Paige stated that she never found any pawn shop slips or items in her home that did not belong to her. Appellant points out that he was not seen entering the residence or in the area, and Begnaud's property was never recovered or shown to have been pawned. However, such evidence is not necessary to support a conviction for burglary of a habitation with intent to commit theft. *See In re M.A.L.*, 224 S.W.3d 233, 236 (Tex. App.—El Paso 2005, no pet.) ("Despite [the appellant's] contentions, the State was not required to show there were witnesses to the crime or that [appellant] was found in possession of the stolen items.").

5

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Viewing all of the evidence in the light most favorable to the verdict, we conclude that any rational fact finder could have found that appellant entered Begnaud's apartment without consent on October 24, 2009, with the intent to commit theft. The evidence is sufficient to support appellant's conviction. We overrule appellant's issue.

Having overruled appellant's issue, we affirm the trial court's judgment.


/s/    Sharon McCally
       Justice


Panel consists of Justices Frost, McCally, and Mirabal.[1]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[1] Senior Justice Margaret Garner Mirabal sitting by assignment.