# NO. 12-13-00118-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ANTHONY SHANE HARBER,*<br>*APPELLANT* | § | *APPEAL FROM THE 114TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Anthony Harber appeals his conviction for burglary of a habitation. In one issue on appeal, Appellant challenges the legal sufficiency of the evidence to support his conviction. We affirm.

## BACKGROUND

Appellant was charged by indictment with burglary of a habitation, a second degree felony. Appellant pleaded "not guilty," and the case proceeded to a jury trial. At the conclusion of the trial, the jury found Appellant guilty of burglary of a habitation as charged in the indictment, and assessed his punishment at eighteen years of imprisonment. This appeal followed.

## LEGAL SUFFICIENCY

In his sole issue on appeal, Appellant argues that the evidence is legally insufficient to support his conviction.

### Standard of Review and Applicable Law

In Texas, the *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a

criminal offense that the state is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

A person commits the offense of burglary of a habitation if, without the effective consent of the owner, the person enters a habitation with the intent to commit a felony, theft, or an assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011). Direct evidence of entry is not required. *Hernandez*, 190 S.W.3d at 865. Entry may be established by inference, just as inferences may, and often must, be used to prove the elements of an offense. *Id.* The specific intent to commit theft may be inferred from the circumstances. *Stine v. State*, 300 S.W.3d 52, 57 (Tex. App.—Texarkana 2009, pet. dism'd, untimely filed) (citing *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989)).

<u>Analysis</u>

The evidence shows that on July 5, 2012, Rex Thompson left his house located in Smith County, Texas, at approximately 10:00 a.m. When he returned at 12:30 p.m., his garage door was open, and cash, twenty-nine handguns and rifles, and other personal property had been stolen. The record shows that law enforcement did not find any fingerprints in the house, and none of the stolen property was located or recovered.

2

The only evidence connecting Appellant to the burglary was a cell phone discovered under a china cabinet in Thompson's dining room and a light blue Ford Ranger pickup that a witness saw parked at Thompson's house the morning of the incident. The record establishes that Appellant did not have permission to enter Thompson's house. However, Appellant argues, the evidence is not legally sufficient to prove the other elements of burglary of a habitation, i.e., that he entered, or attempted to enter, the house, or that he had the intent to commit theft or committed theft.

*Cell Phone*

Before law enforcement arrived at Thompson's house, Thompson's grandson found a cell phone under the china cabinet in the dining room. The cell phone did not belong to Thompson or anyone else at his residence. A Smith County Sheriff's Office patrol officer called the last number dialed on the cell phone. The officer testified that Fred Rowan answered and informed her that she was calling from Appellant's cell phone.

Fred Rowan testified that Appellant was his client and was required to give him personal information, including telephone numbers and addresses. Appellant was also required to call him once a week. On June 18, June 25, and July 2, 2012, Appellant called Rowan from a cell phone number that matched the number of the cell phone found in Thompson's home. On July 9, 2012, Appellant called Rowan on a different number and never called him from the first cell phone number again.

Jim Fortner, a detective with the Smith County Sheriff's Office, testified that a forensic examination and download of the cell phone included text messages from July 4 and July 5, 2012. The last outgoing text message was on July 5, 2012, at 10:29 a.m. After this message, there were several incoming text messages that "show[ed] to be unread." Fortner stated that the last telephone call occurred on July 5, 2012, at 9:01 a.m. to Rowan. However, he conceded that if a cell phone is stolen, someone else could send text messages and make telephone calls as long as the cell phone remained active.

The State suggests, and we agree, that the cell phone evidence in this case is "somewhat akin" to evidence of a fingerprint being found at the scene of a burglary. This is because cell phones and fingerprints contain identifying information specific to an individual. For example, a cell phone may contain contact information, photographs, text messages, and phone logs from which the owner's identity can be determined.

When evaluating the legal sufficiency of the evidence in burglary cases, the court of criminal appeals has said that "the fingerprints of an accused, which necessarily must have been made at the time of the burglary, are sufficient to sustain a conviction without further identification evidence." *Clayton*, 235 S.W.3d at 779 (quoting *Phelps v. State*, 594 S.W.2d 434, 435 (Tex. Crim. App. 1980)). In burglary cases, fingerprints constitute direct evidence of the ultimate fact to be proved—illegal entry. *Id.* When examining burglary cases in which the only proof of identification is fingerprint evidence, we must consider whether the fingerprint could have been left at another time. *Jones v. State*, 936 S.W.2d 678, 680 (Tex. App.—Dallas 1996, no writ).

Here, similar to a fingerprint, the phone number for the cell phone found in Thompson's house was identified by Rowan as being Appellant's. A forensic examination of the cell phone showed four telephone calls to Rowan, including one on the morning of the burglary. However, after the burglary, Appellant never called Rowan from that cell phone number again. Further, the cell phone did not belong to anyone at Thompson's house, and there is no evidence that Appellant and Thompson were acquainted or that Appellant had ever been in Thompson's house. Thus, Thompson's house was not accessible to Appellant at any other time and the cell phone could not have been left at the house at any time other than during the burglary. *See Clayton*, 235 S.W.3d at 779; *Jones*, 936 S.W.2d at 680.

*Light Blue Pickup*

The other piece of evidence connecting Appellant to the burglary was a light blue Ford Ranger pickup. Thomas Sealy testified that on the day of the burglary, he was working near Thompson's house and at approximately 11:00 a.m., noticed a vehicle at the house. He did not recognize the vehicle and described it as an early model, light blue Ford Ranger pickup. Sealy stated that the pickup was backed up to the garage. He did not see anyone come out of the garage or notice when the pickup left Thompson's house.

According to Detective Fortner, Appellant had been seen in a blue Ford Ranger pickup. One person told Fortner that he knew Appellant's girlfriend, Amanda Claitor. That witness also informed the detective that Appellant drove a blue Ford Ranger, and recalled seeing him driving the pickup less than a week after the burglary. According to Fortner, Joshua Garth Claitor, Amanda's brother, told him that Appellant had been driving the blue Ford Ranger, but was now

4

driving another vehicle.[1]  Fortner was never able to speak to Jason Craft, the owner of the pickup, even though he attempted to do so several times.

Claitor testified that his sister, Amanda, was Appellant's girlfriend.  He testified that Amanda lived in a duplex with Craft, the owner of an older model, light blue Ford Ranger pickup.  He stated that Craft parked his pickup at an abandoned gas station when he drove his eighteen-wheeler truck.  Claitor stated that on at least one occasion, he had borrowed the pickup.  He said the pickup was unlocked and the keys were inside it.

Appellant points out that no one saw him at or near Thompson's home, and that he was not found in possession of the stolen property.  However, such evidence is not necessary to support a conviction for burglary of a habitation with intent to commit theft.  *See* ***In re M.A.L.***, 224 S.W.3d 233, 236 (Tex. App.—El Paso 2005, no pet.) ("Despite [the appellant's] contentions, the State was not required to show there were witnesses to the crime or that [appellant] was found in possession of the stolen items.").

Appellant also contends that there is no evidence that he owned the pickup or drove it the day of the burglary.  However, there was testimony that Appellant had been seen driving the pickup both before and after the burglary. We presume that the jury resolved the conflict between Claitor's prior statement to Fortner and his testimony in favor of Appellant and defer to that determination. *See* ***Clayton***, 235 S.W.3d at 778.

Conclusion

The jury reasonably could have found from the cell phone evidence that Appellant was at, and in, Thompson's house on the day of the burglary. The testimony that a light blue Ford Ranger pickup was parked at Thompson's house, when considered with the testimony that Appellant had been driving a pickup of the same description, provides further support for the jury's finding that Appellant entered the house on the day of the burglary. The cumulative force of these incriminating circumstances, along with the absence of any connection between Appellant and Thompson, supports an inference that Appellant entered Thompson's house with the intent to commit theft. *See* ***Hooper***, 214 S.W.3d at 13.  Therefore, the jury reasonably could have found the essential elements of burglary of a habitation beyond a reasonable doubt.  *See* TEX. PENAL CODE ANN. § 30.02(a)(1). Accordingly, we overrule Appellant's sole issue.

---

[1] At trial, Claitor testified that he did not recall telling law enforcement that he had seen Appellant driving the Ford Ranger, and denied ever seeing Appellant drive it.

5

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the judgment of the trial court.


**BRIAN HOYLE**
Justice


Opinion delivered November 21, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

NOVEMBER 21, 2013

NO. 12-13-00118-CR

**ANTHONY SHANE HARBER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-1718-12)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*