# NOS. 12-17-00236-CR
# 12-17-00237-CR
# 12-17-00238-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BUDDY WAYNE WILEY,* *APPELLANT* | § | *APPEALS FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Buddy Wayne Wiley appeals his convictions for aggravated sexual assault of a child. In a single issue, Appellant contends the evidence is insufficient to support his convictions. We affirm.

### BACKGROUND

In May 2014, K.E. exposed herself to children during recess and attempted to kiss other girls while outside. As a result, she was referred to her elementary school assistant principal and counselor. While speaking with the principal and counselor, K.E. stated that she had been orally and vaginally raped by her father, Appellant, several times. During the investigation and counseling sessions that followed, authorities learned that K.E. claimed to have been anally assaulted as well.

Following the investigation, Appellant was indicted in three separate cases for aggravated sexual assault of a child. Each charge alleged that Appellant sexually assaulted K.E. in a different manner: orally, vaginally, and anally. Appellant pleaded not guilty to all three charges.

The cases were consolidated into one trial. Ultimately, the jury found Appellant "guilty" for all three counts and sentenced Appellant to life imprisonment for each count. This appeal followed.

**SUFFICIENCY OF THE EVIDENCE**

In his sole issue, Appellant contends the evidence is insufficient to support his convictions. Specifically, Appellant argues that the victim's testimony is legally insufficient to support the jury's verdict.

**Standard of Review**

In Texas, the ***Jackson v. Virginia*** standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. ***Brooks v. State***, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. ***Jackson v. Virginia***, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. ***Padilla v. State***, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010). The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. ***Brooks***, 323 S.W.3d at 899.

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. ***Clayton v. State***, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. ***Id.*** Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. ***Hooper v. State***, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. ***Hernandez v. State***, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

**Analysis**

According to Appellant, the State failed to carry its burden of proving aggravated sexual assault of a child because K.E. was unable to recall whether Appellant had assaulted her. To satisfy the elements of aggravated sexual assault of a child, the State was required to prove that

Appellant intentionally or knowingly contacted or penetrated the mouth, sexual organ, or anus of K.E., a child under fourteen at the time of the offense. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i)-(iii), (a)(2)(B) (West Supp. 2016). Identity of a perpetrator may be proved by either direct or circumstantial evidence. *See* **Earls v. State**, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986). The fact that a victim fails to identify the defendant at trial goes to the weight and credibility of the witness and is a matter for the jury's consideration. **Meeks v. State**, 897 S.W.2d 950, 955 (Tex. App.—Fort Worth 1995, no pet.). It is the jury's province to determine the credibility of the child victim and other witnesses and the weight to be given to that evidence. *See* **Saxton v. State**, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

At trial, when asked whether Appellant ever did anything to hurt her, K.E. answered "I don't know." And when asked whether she remembered telling school personnel, law enforcement, counselors, or child advocacy personnel what happened between herself and Appellant, she repeatedly replied that she did not remember. However, when asked whether she remembered telling her mother what happened with Appellant, she responded by nodding her head affirmatively. K.E. also testified that she told her mother what happened and "who did it."

In addition to K.E.'s testimony, the jury heard several witnesses testify that K.E. told them that Appellant assaulted her. Karli Sitton, a former assistant principal at K.E.'s elementary school, testified that she took K.E. to the counselor's office following a report that K.E. "exposed herself and was trying to kiss other students and was kind of doing some humping behavior as well." During their conversation with K.E., the school counselor, Jennifer Allen asked K.E. why she was acting out and if she had seen something like it before. K.E. became very upset and began to shake, cry, and vomit. K.E. also told the women that her "daddy raped her." Sitton testified that K.E. told her that "he had asked her to take off her clothes and touched her girl part." And when asked if her dad did anything "with his boy part," K.E. responded that he put it "in her middle part." Sitton testified that she understood K.E. to be referencing her vagina. The school resource officer was then contacted and the officer contacted the Texas Department of Family and Protective Services (the Department).

Kristi Cox, one of K.E.'s foster mothers, testified that she caught K.E. watching pornography on her computer. Cox further testified:

A: After being caught watching pornography, she had told me that she would watch with her mom and her dad. They would watch it together at home and that she was forced to have sexual relations with dad.

Q: Did she ever tell you who "dad" was?

A: Buddy was his name.

Callie Nisbet, K.E.'s adoptive mother, testified that K.E. told her that she was raped multiple times. According to Nisbet, K.E. told her certain details about the assaults:

A: She was about to throw a fit, and she said that [Appellant] had told her to go get into the shower to calm down. And then he went into the shower, and he began to have sex with her. That explained to me why she wanted to be – wanted me to be with her every time she was taking a shower.

Q: Did she describe the type of abuse that occurred during that incident?

A: Yes. I'm not positive that first time if he went – if he penetrated her anally or in her vagina, but she's had it every way. And then on another occasion, he took her into her room on her bed and other places. There were so many countless times she couldn't remember them all.

The jury also heard testimony that K.E. told her counselors that Appellant assaulted her. Debra Henderson testified that K.E. told her "that her daddy, Buddy, had done bad things to her and to her private parts." Henderson further testified that K.E. was afraid to talk about what happened because Appellant threatened to harm her if she told. K.E. also told Henderson that her mother met Appellant when she was seven years old and that Appellant started doing "bad things" to her when she was ten years old. Russell Bailiff, a licensed clinical social worker, also testified that he counseled K.E. During their sessions, K.E. told Bailiff that Appellant "touched her vaginal and anal areas with his penile area" and that Appellant's "penile area had touched her mouth and that her mouth and [Appellant's] mouth also touched." Another counselor, Georgia Beard, testified that K.E. identified Appellant as the man who assaulted her.

Misty Permenter, a sexual assault nurse examiner (SANE) who performed K.E.'s examination, testified that K.E. "had redness from 3:00 to 9:00 o'clock on her hymen area," which is uncommon for a child K.E.'s age. Permenter stated that the redness was consistent with what K.E. told her occurred. Permenter testified that she documented K.E.'s statements verbatim and that K.E. told her the following during the examination:

4

When I'm at my mom's – when my mom is at work at Brookshire's Warehouse, she works in the day. My dad told me to take my clothes off. My whole thing, my shirt, pants, and panties in the living room. He takes my clothes off. He told me to lay on the couch on my back.

The last time was Friday after school. I ride a bus. He gets on top of me. He isn't wearing any clothes. He puts his private in my private part. And patient at this point had pointed to her vaginal area. He did it Monday, Tuesday, and Wednesday, then Friday. He stays on top of me for 20 minutes. It hurts. I wanted to tell him to get off of me, but I was scared. He would talk to me funny.

I've been sad. He tried to kiss me. And he tells me to quit moving, quit trying to get away. He tried to put his private in my mouth. He actually put it in. I told him to stop.

He sometimes puts his fingers inside of me. He has done this to me on the couch in the living room and on my bed. He made me lay on my stomach, too. He squeezed my butt and put his private in it. He's been my daddy for seven years. His name is Buddy.

Jennifer Kelly, the director of client services and a forensic interviewer at the Children's Advocacy Center, testified that she conducted a forensic interview of K.E. in May 2014. In that interview, K.E. told her that "her daddy raped her" and that her "daddy" was Appellant. Kelly testified that K.E. told her that Appellant "put his middle spot in her middle spot," which Kelly believed K.E. was referencing as Appellant's "private parts." Kelly further stated that "[s]he went back and forth between the butt, the mouth, and the middle spot with regard to where he put his penis. And it becomes confusing, but she did state that he put his penis in all three orifices."

Despite all of this evidence, to support his argument that the evidence is insufficient, Appellant emphasizes that K.E. made a statement in which she said Appellant did not assault her. Melissa Tant, one of K.E.'s foster parents testified regarding the context of that recantation. K.E. was placed with Tant by the Department following the initial outcry. According to Tant, K.E. had spoken with her mother on the phone:

I always had the phone on speaker so I was able to hear what was going on. She just said that her kitty cat was missing her and all her stuffed animals were on her bed and how they missed – missed her and how the cat was, you know, laying – laying in her bed missing her so . . .

Within the next few days, K.E. was at a baseball game with Tant and K.E.'s mother was also at the baseball field. Tant testified that K.E. wanted to go home to her mother and that she missed everybody at her home. That is when K.E. told Tant that the abuse did not occur.

According to Appellant, K.E.'s recantation and the State's reliance on outcry testimony make the evidence insufficient to support his conviction. However, outcry testimony is substantive evidence that is sufficient to support a conviction beyond a reasonable doubt. *See*

*Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991). Furthermore, it is the factfinder's role to determine whether to believe a victim's recantation or prior statement. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Saldana v. State*, 287 S.W.3d 43, 60 (Tex. App.—Corpus Christi 2008, pet. ref'd) (holding outcry testimony was sufficient to sustain conviction and jury was entitled to disbelieve victim's recantation of outcry statement); *Martines v. State*, 371 S.W.3d 232, 241 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (complainant's recantation of earlier outcry testimony does not destroy probative value of that testimony). Accordingly, as sole judge of the weight and credibility of the testimony, the jury was entitled to credit evidence demonstrating that Appellant committed the acts originally disclosed by K.E. and supported by the testimony of multiple witnesses and to disregard K.E.'s recantation. *See Brooks*, 323 S.W.3d at 899; *see also Chambers*, 805 S.W.2d at 461; *Saldana*, 387 S.W.3d at 60; *Martines*, 371 S.W.3d at 241.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found each element of aggravated sexual assault of a child beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 912; *Moore v. State*, No. 12-14-00077-CR, 2016 WL 787074, at *3 (Tex. App.—Tyler July 27, 2016, no pet.) (mem. op., not designated for publication). Because the evidence is legally sufficient to support Appellant's convictions, we overrule his sole issue.

## DISPOSITION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgments.

JAMES T. WORTHEN
Chief Justice

Opinion delivered May 31, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00236-CR**

**BUDDY WAYNE WILEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 241-1557-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2018**

**NO. 12-17-00237-CR**

**BUDDY WAYNE WILEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1558-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

MAY 31, 2018

NO. 12-17-00238-CR

**BUDDY WAYNE WILEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 241st District Court

of Smith County, Texas (Tr.Ct.No. 241-1559-15)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*